## L'AMOUREUX *vs.* VANDENBURGH and others.

Where an attorney, who held a mortgage upon certain premises, was employ-ed by the mortgagor to draw the deed and to assist him in conveying a part of the mortgaged premises to another person who was ignorant of the existence of the mortgage, and such attorney knowing that the purchaser was paying the vendor the full value of the premises concealed from him the fact of the previous incumbrance; *Held,* that the attorney could not in equity be permitted to enforce the lien of his mortgage against the part of the premises conveyed to such purchaser.

The holder of a mortgage who has been guilty of a fraudulent concealment, which deprives him, in equity, of the right to enforce the lien of his mort-gage against the mortgaged premises in the hands of a purchaser from the mortgagor, cannot by a subsequent assignment of the mortgage give to the assignee a right to enforce s  ch lien.

Where a person holding a mortgage, or having a claim to property which another, who is ignorant of such mortgage or claim, is about to purchase from a third person, either encourages or acts in the sale of the property in any way inconsistent with his prior mortgage or claim, and con-ceals from the purchaser the existence of his mortgage or claim, he will not afterwards be permitted to set it up as against such purchaser.

Whether a mere stranger to the transaction, who neither encourages the sale nor takes any part in the execution or consummation thereof, but who knows that the sale is about to be made to a person ignorant of the exist-ence of such claim, is bound to give notice of his claim to the purchaser when no application is made to him on the subject; *quære?*

December 18.  THIS was an application on the part of the defendant William J. Vandenburgh, to set aside the decree, and the sale of the petitioner's lot thereon, and all the proceedings in this cause against him, for irregularity as well as upon the merits.  The bill was filed to foreclose a mortgage given by Alexander O. Spencer to L'Amoureux and Van Epps, in July, 1835, upon several lots of land in Greenbush, in the county of Rensselaer, including lot No. 39 now owned by the petitioner, to secure the payment of $5000 and interest. In February, 1836, Spencer, the mortgagor, sold and con-veyed lot No. 39 to the petitioner, by a warrantee deed, in exchange for other property in the city of Albany, and with-out informing the petitioner of the previous mortgage.  In making this exchange of property, Van Epps, one of the mortgagees and the law partner of the other mortgagee,

was employed as the attorney of Spencer to draw the deed to the petitioner, and to receive a proper conveyance of the Albany property from him in exchange therefor. And he did so without informing the petitioner of the previous mortgage which he and his partner then held upon the premises for which the deed was given by Spencer to the petitioner. The petitioner swore positively, that both Spencer and Van Epps, at the time of the exchange, assured him that there were no liens or incumbrances on the premises so conveyed to him ; and that he believed these assurances were made in the presence and hearing of L'Amoureux, the other mortgagee. In answer to this part of the petition, L'Amoureux stated that his partner t ok the mortgage, and that he did not know at the time what lands were included in it, and that, according to his recollection and belief, he did not know that the petitioner had purchased a part of the land which was included in the mortgage until about the time of making the search with a view to the foreclosure of the mortgage. But whether he was present at his office at the time the deeds were executed and knew that Spencer and Vandenburgh were making an exchange of property he did not state. The affidavit of Spencer was produced in opposition to the motion, in which he stated that he did not recollect that any thing was said, at the time of the exchange, about the mortgage to L'Amoureux & Van Epps ; but that if he had been asked about it he would have told the petitioner the truth. Van Epps swore positively that he never told the petitioner that the property he obtained from Spencer was free from incumbrances ; and that if he had been asked he would have told him the true situation of it as far as he knew. But that he was not employed by Vandenburgh, who got some other person to fill up the deed which he gave to Spencer ; and that employed as deponent was by Spencer, he should have thought it wrong to have volunteered a statement which might have prejudiced his employer. About one month after this exchange of property Van Epps assigned all his interest in the bond and mortgage to L'Amoureux, his copartner. And in August, 1837, he joined with L'Amoureux in a release of another part of the premises

from the mortgage, to enable Spencer to obtain a loan of $2000 from the commissioners of loans, on the property so released; but without informing L'Amoureux of the previous conveyance of a part of the mortgaged premises to the petitioner as a bona fide purchaser thereof. In February, 1838, the complainant filed a bill to foreclose the mortgage, in which bill a great number of persons were made parties as defendants. And on the 9th of May, Van Epps, as the solicitor for his copartner L'Amoureux, served on the petitioner a paper purporting to be the copy of a subpœna tested in February and returnable on the 12th of May *instant*, and a notice of the object of the suit. But neither in the subpœna nor in the notice was the defendant named as a party; and he swore positively that no other papers were shown to or served upon him; and that the solicitor did not show or exhibit to him any seal of the court or any subpœna with a seal of the court attached thereto or impressed thereon. The affidavit on file, on which the default of the petitioner was subsequently entered, was not in the usual form; but merely stated that the deponent on the 9th of May served on the petitioner *a copy of a subpœna* and notice of the object of the suit, without stating that the petitioner was named in that copy or that any original subpœna or seal, corresponding with that copy, or otherwise, was shown to or read to him at the time of such service. Neither was there any seal upon the subpœna on file with that affidavit. But the solicitor, in answer to this application, swore that he, at the time of the service, *supposed* he served a copy of the subpœna which was annexed to the affidavit he was then making, and in the usual form, by showing him the annexed subpœna and seal thereon impressed; and that he now *believed* and therefore *charged*, that the annexed subpœna and seal were shown to the petitioner. The petitioner finding his name was not in the papers served on him, as a party to the suit, and being told, as he alleged, that the service of those papers was mere form and would not affect his lot, he paid no further attention to the same; and was not aware of any decree or other proceedings against him until he found the property was ad-

vertised for sale. He then applied to Spencer, who assured him that the other property would sell for enough to pay the debt and costs, and that his house and lot would not be sold. He did not attend the sale, and the complainant bid in the whole property, for the amount due upon the mortgage and costs, including the petitioners's lot which was bid in for $800. The other parts of the mortgaged premises were sold subject to the $2000 mortgage given to the commissioners of loans, and were worth, as the petitioner alleged, $10,000. But the complainant swore he was willing to part with the whole property for $7,500, which was only about $1000 more than was due upon the decree, including interest and costs; and he swore that he had other demands against Spencer exceeding that amount.

*J. V. N. Yates,* for the petitioner.

*H. V. D. Van Epps & M. T. Reynolds,* for the complainants.

THE CHANCELLOR. Two questions of importance arise in this case : *First.* Whether the petitioner had a meritorious defence which he might have availed himself of in this case if he had employed counsel and attended to it in season ? *Secondly.* Whether the proceedings against him have been such as to entitle the complainant to hold the petitioner's house and lot under the decree and master's sale ?

In relation to the first question I am fully satisfied that the petitioner had a valid equitable defence to this suit ; so far as it sought to subject his lot to the payment of any deficiency which might be due on this bond and mortgage, after selling the residue of the mortgaged premises subject to the lien of the commissioners of loans. The complainant and his partner Van Epps were the joint holders and owners of this mortgage when the latter was applied to as a lawyer to prepare the deed to the petitioner, and to receive a conveyance from him to Spencer for other property in exchange. And although L'Amoureux had no personal notice of the transaction, and probably did not know what his

1838.

L'Amoureux
v.
Vandenburgh.

partner was doing, even if he was present in the office at that time, yet the business was undoubtedly of a character which entitled him to share in the profits thereof as a partner although he did not draw the deed himself. Whether this was so or not, if Van Epps has done an act which deprived him of the equitable right to enforce the collection of this bond and mortgage against the land conveyed to the petitioner through his instrumentality, he cannot by subsequently assigning his interest in the mortgage to his partner give to the latter a right, as against the lot conveyed to the petitioner, which the assignor did not himself possess. In other words, the assignee of this chose in action took it subject to all the equities which existed against it in the hands of the assignor. And if by a concealment of the real facts of the case from the complainant, Van Epps has induced him to pay more for his interest in the bond and mortgage than it was really worth, or has suffered the complainant to release other parts of the mortgaged premises from the lien of the mortgage by concealing from him the fact that a part of the premises had already been conveyed to a bona fide purchaser, as he swears he did, the complainant must look to his co-partner and assignor for his remuneration for the injury.

Although Van Epps denies that he told the petitioner, in express terms, that there were no liens or incumbrances on the property which Spencer was conveying to him, as sworn to by the petitioner, yet he admits in substance that he concealed from Vandenburgh the fact that himself and L'Amoureux then held a mortgage, of $5000, which covered the premises Spencer was then conveying to him with warranty; and for which he knew the petitioner was then paying a full price by the conveyance of other property in exchange therefor. This, except so far as the mere question of personal veracity is concerned, is the same thing as if he had told him there was no incumbrance on the property. For as he knew that Spencer was receiving the full value of the property from the petitioner, it was his duty to speak and let the vendee know that Spencer was imposing upon him by conveying to him, with warranty, property which

had been previously mortgaged to Van Epps and his partner. And the excuse of Van Epps, that he thought it would be wrong to volunteer a statement which might be prejudicial to his employer, is one that cannot avail him in a court of equity. Mr. Justice Story very properly applies to the prior incumbrancer, in such cases, the maxim that it is a fraud to conceal a fraud. (1 *Story's Eq.* 379, § 390.) Nor will the fact that the prior incumbrancer concealed the knowledge of his claim from the subsequent purchaser, or mortgagee, from prudential motives, or from a mistaken sense of duty to his employer, avail him here; where the equitable rule is that he who does not speak when conscience and a just regard to the rights and interests of others require him to speak, he shall not be permitted afterwards to assert his claim to their injury. (*Pote* v. *Pote*, 1 *Vern. Rep.* 239.) It is not necessary to inquire whether a mere stranger to the transaction who knows that other parties are in a treaty for the purchase of property on which he has a lien or claim is bound to give notice of such claim. In *Mocatta* v. *Murgatroyd*, (1 *P. Wms.* 393.) Lord Cowper held that a prior mortgagee who merely witnessed the subsequent conveyance or mortgage without disclosing his claim upon the mortgaged property, should be postponed. His lordship in that case relied upon the presumption that the subscribing witness knew the contents of the instrument he witnessed. I agree, however, with the opinion afterwards expressed by Lord Thurlow, that the case of *Mocatta* v. *Murgatroyd* was wrongly decided, if there was no other evidence of the fact that the prior mortgagee knew that the parties were in a treaty for a second mortgage than the mere constructive notice arising from the circumstance that he had witnessed the deed. For, as Lord Thurlow justly remarks, it is well known that in practice witnesses are not always privy to the contents of the deed to which they subscribe their names. (1 *Bro. C. C.* 357.) And to deprive a third person of his right upon the ground of fraud, he must at least be connusant of the treaty in which the fraud was practised. In this case, however, Van Epps, one of the prior mortgagees, not only had notice of the treaty to ex-

change the property between Spencer and the petitioner, and that the latter was to have a warrantee deed of the lot in question, but he was actually employed as the attorney of Spencer to assist in making that exchange of property. He also admits he drew the deed to the vendee without informing him of the existence of his prior mortgage. And I have not been able to find any case on this subject, where the prior incumbrancer or claimant not only was cognizant of the negotiation but actually encouraged or assisted therein, in which his claim was permitted to stand against the bona fide purchaser or mortgagee from whom he had concealed the fact of the existence of such prior claim ; except where he was himself ignorant of such prior claim. In the case of *Berrysford* v. *Millward*, (*Barnard. Ch. Rep.* 101,) Lord Hardwick granted a perpetual injunction against a mortgagee who was casually present at a negotiation, between the mortgagor and another, as to a marriage settlement on the marriage of their children, and concealed the fact of his mortgage from the father of the intended bride, but made a verbal promise to the mortgagor to rely upon his personal security only. And the chancellor there refers to another case, where a perpetual injunction was granted against a mortgagee who had engrossed a deed of settlement without disc'osing that he had a mortgage on the estate ; and that too although the mortgagee was not of age at the time he engrossed the deed. The case referred to I presume is that of *Clere* v. *The Earl of Bedford*, referred to by Viner, (13 *Vin. Abr.* 536, *Fraud*, 2,) and in the cases of *Savage* v. *Foster*, (9 *Mod. Rep* 38,) and *Hunden* v. *Cheney*, (2 *Vern.* 150,) where the same rule was applied to a feme covert. And if the infant mortgagee, who as the mere clerk of the mortgagor was called upon by him to engross the deed, was considered as guilty of a fraud in concealing the fact of his incumbrance from a subsequent mortgagee, or purchaser, certainly an adult attorney who does the same thing is not entitled to a greater indulgence than has been allowed to infants and femes covert ; although he thought it would be doing injustice to his employer if he volunteered the disclosure of facts which would have prevented the per-

petration of a fraud. I take it therefore as settled law, that if the prior mortgagee, or claimant of property, either encourages or in any way acts in the negotiation or consummation of a subsequent transfer of that property which is inconsistent with such prior right, and at the same time conceals from the purchaser the knowledge of the existence of his claim, this court will not permit him afterwards to set up such prior right against the purchaser or grantee who would be defrauded thereby.

Van Epps and his copartner, in the present case, therefore had no right to enforce the lien of this mortgage against the land which they as attornies had assisted in selling to the petitioner with warranty, in exchange for other property to the full value. And the subsequent transfer of the interest of Van Epps to his partner could not give to the latter a right which did not exist previous to that assignment; as the assignee took it subject to all equities which previously existed against it in favor of the petitioner. It is not necessary then that I should examine the question whether the subsequent release of other portions of the property to the extent of $2000, to the commissioners of loans, did not of itself, in equity, release the lot which had been previously conveyed to Vandenburgh from the lien of this mortgage. Van Epps, who joined in the release to the commissioners of loans, certainly ought not to have concealed the fact from his own assignee that Spencer had previously sold a part of the mortgaged premises to a bona fide purchaser, and that by executing such release the assignee might endanger his security. Upon a full view of this case, therefore, I am satisfied it would be doing great injustice to the petitioner to permit this decree to stand against him. And it only remains to be seen whether the decree against him has been irregularly as well as inequitably obtained.

If the suit was properly commenced against the petitioner, by the service of a subpœna upon him in which he was named as a party, the court would not, in ordinary cases, after a decree, be very astute in inquiring into mere technical irregularities for the purpose of opening the proceedings. But from the examination of the affidavits on both sides I

am satisfied that the suit was never commenced against the petitioner by the service of any subpœna to which he was made a party. He swears positively that the only subpœna served upon or shown to him was the copy annexed to his petition, in which he is not named as a party to the suit. And as his name was not in the subpœna or in the notice, there was nothing in either to apprise him that an entry of his appearance would be required, even if he was not told that the service of these papers upon him was mere form. And the solicitor who served those papers does not say that he believes he told the petitioner that he was a party to the suit, or that it was necessary for him to enter his appearance and put in an answer or that a decree would be entered against him for the sale of his land. Neither does the solicitor swear positively to the service of any subpœna, even by showing the same to the petitioner, in which he was named as a party. And an affidavit of mere belief is not sufficient to counteract the positive oath of the petitioner; supported as that oath is by the original affidavit of service which was made and filed shortly after the copy of a subpœna was delivered. The solicitor is therefore undoubtedly mistaken in now supposing that he showed an original subpœna to the petitioner with the seal of the court attached to the same. The result is that the whole proceedings as against Vandenburgh, subsequent to the filing of the bill, have been wholly unauthorized, and must be set aside with costs to be taxed; unless the complainant stipulates to modify or amend his decree so as to exempt the lot of the petitioner from a sale under the same and from the lien of the mortgage, and also to pay the costs of this application. If such a stipulation is given the decree must be amended accordingly, and then the sale as to the residue of the mortgaged premises is to stand and be confirmed. And the master in that case will make his report accordingly, and certify the balance due to the complainant on the decree; so that he may have an execution therefor against the property of the mortgagor. But if the decree is to be opened for the purpose of litigating the rights of the petitioner upon the service of a new subpœna upon him, then the whole

decree must be set aside; as it will be necessary to go again before the master, so as to give the petitioner an opportunity of contesting the amount due to the complainant on the mortgage, should he fail in proving his defence.