### JOHN HAKE*

### *v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 23, 1907—Petition stricken Dec: 5, 1907.*

1. CONTEMPT—*proceeding for contempt in violating injunction is remedial.* A proceeding for contempt in violating an injunction is a civil or remedial proceeding as distinguished from criminal proceedings cognizable in courts of law, and the rules of chancery practice govern the proceeding throughout.

2. SAME—*remedial proceeding for contempt may be begun by petition or affidavit.* A remedial proceeding for contempt in violating an injunction may be commenced in the court which issued the injunction, by affidavit or petition, but in neither case is it necessary to set out the alleged contempt with the particularity required in an indictment.

3. SAME—*petition need not set out language of injunction.* A petition filed by the complainants in a chancery proceeding wherein an injunction has been issued, which alleges that the defendants have violated the injunction and prays that they be required to

*With this case are decided the following consolidated cases: No. 5262, *Anderson* v. *People,* and No. 5263, *Sporka* v. *Same.*

show cause why they should not be adjudged to be in contempt, need not set out the language of the injunction or other orders of the court in the proceeding, since courts will take judicial notice of their own orders.

4. SAME—*court may hear any proper evidence in remedial proceeding for contempt.* In a remedial proceeding for contempt in violating an injunction the court may hear affidavits, or any other proper evidence, to determine the truth of the matters, and is not confined to the answers of the defendant, as a court of law is confined to the answers to the interrogatories in a criminal proceeding.

5. SAME—*how remedial proceeding may be entitled—degree of proof.* A remedial proceeding for contempt in violating an injunction may be carried on in the name of the complainant in the original proceeding or in the name of the People upon his relation, but, however entitled and docketed, the rules of chancery practice apply, and proof beyond a reasonable doubt, as is required in criminal cases, is not necessary.

6. SAME—*punishment for contempt in violating an injunction is largely within the court's discretion.* In a remedial proceeding for contempt in violating a strike injunction the court may impose a fine alone and commit the party until the fine and costs are paid, or it may, in its discretion, fix a definite period of imprisonment, with or without a fine; and the fact that the punishment is greater than is imposed by the criminal statutes for like offenses does not render the order of the court unconstitutional and void.

7. APPEALS AND ERRORS—*the rule as to reversal where Appellate Court's judgment is not conclusive of facts.* Although the judgment of the Appellate Court affirming an order of the trial court adjudging persons to be in contempt for violating its injunction is not conclusive upon the Supreme Court as to the facts, yet the latter court will not reverse the judgment upon the facts unless the finding is against the clear preponderance of the evidence.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming an order of the superior court of Cook county finding John Hake, Charles Anderson and Frank Sporka guilty of contempt of court

and sentencing each of them to imprisonment in the county jail for four months.

The following statement of the case is made by the Appellate Court for the First District, and upon examination and comparison we find the statement full and accurate, and accordingly adopt it as a correct statement in this case:

"M. Born & Co., a corporation, organized under the laws of Illinois, filed its bill in the superior court for an injunction against the United Garment Workers of America, the Chicago Coat Seam Pressers, Local Union 150 of the United Garment Workers of America, the Brotherhood of Custom Cutters and Trimmers to the Trade, Local Union No. 21 of the United Garment Workers of America, District Council No. 6 of the United Garment Workers of America, Local Union No. 194 of the United Garment Workers of America, and other local unions of the United Garment Workers of America, and divers individuals, officers of said unions, and averred that the complainant was engaged at 337 Franklin street, Chicago, Illinois, in the manufacture of coats and vests and employed a great number of men and women; that before the filing of the bill it had employed in its business organized labor affiliated with the United Garment Workers of America and its several affiliated local unions; that on November 18, A. D. 1904, the said union inaugurated a strike against complainant for the purpose of dominating and controlling the employment of skilled coat and pants workers, bushelmen, pressers and trimmers in the city of Chicago, and for the purpose of prohibiting other workmen and workwomen, and those affiliated with the said union or unions, from working at their trade in the city of Chicago; that prior to November 18 the complainant's employees were members of the different unions; that thereafter they left complainant's place of business and gathered around said place of business for the purpose of intimidating the complainant's employees who remained at work; that as said persons went to and from their work

they were stopped and interfered with by said defendants, who had instituted a system of picketing; that the defendants named in the bill, and others who are unknown to the complainant, continued to surround complainant's place of business and are still maintaining said picket line, by reason whereof complainant's employees have refused to continue to work; that some of complainant's employees are willing to continue to work but are afraid to do so, by reason of which complainant is prevented from carrying on its business; that complainant has requested its employees to continue to work; that said employees have tried to do so, but were intercepted by said pickets and compelled by threats and intimidation to desist therefrom; that the defendants named in the bill have combined and conspired for the purpose of inflicting injury upon the business of the complainant; that in furtherance of the said purpose the defendants caused a system of picketing to be maintained and established around complainant's plant since the commencement of the said strike, and have intercepted persons who remained in complainant's service, persons going to and from complainant's factory for the purpose of obtaining employment, and that the employees of complainant have been assaulted either by said defendants or persons in combination with them, and that personal injuries have been inflicted upon some of the employees of the complainant; that the effect of said picketing and assault has been to terrify the employees of complainant and make them afraid, and by reason thereof persons have been unwilling to enter the service of complainant, and complainant has been deprived of the services of a large number of persons who would otherwise have taken employment from it; that if said picketing and assaults are continued irreparable loss and damage to complainant's business will result; that the picketing system has been and is under the direction and instigation and advice of the United Garment Workers of America and its officers, for the purpose of injuring complainant's busi-

ness and terrifying its employees and coercing complainant to make a settlement with them whereby a renewal of a closed shop agreement in the wholesale tailoring industry should be executed by the complainant; that persons associated with the defendants are surrounding complainant's place of business and are engaged in altercations with complainant's employees as they pass in and out of its place of business; that these employees are called vile names, such as 'scabs,' and opprobrious epithets, and that threats are being used against them; that said defendants' associates are intimidating and terrifying complainant's employees in numerous ways, by reason of which many of said employees are about to leave complainant's employment and will do so if the said system of picketing is continued; that in the course of its business complainant had, prior to the filing of this bill, entered into numerous contracts with divers persons in Chicago and throughout the United States to manufacture and sell clothing, and that in many of said contracts time is the essence of the contract; that the contracts are very valuable, the exact value complainant is unable to determine; that it will be obliged to use every possible facility to complete its contracts within time; that various orders will be canceled and will result in losses of patrons and profits to complainant, and complainant will be unable to complete contracts and carry on its business unless the defendants are restrained from interfering with its said business in the manner aforesaid, and complainant will sustain irreparable loss and injury; that complainant's business requires skilled mechanics, and that if those are prevented from working by defendants and the co-conspirators, the complainant's business will be crippled and perhaps destroyed and great loss will come to the complainant; that said loss will arise from the cost of protecting contracts partially finished, in loss of trade and profits, damages for unperformed contracts and loss of patrons; that said loss cannot be estimated in money; that there are many ele-

ments of loss which will occur which cannot be determined or fixed in money value; that the continuance of said conditions will destroy complainant's good will in the business which complainant has built up through many years of toil; that the conspiracy of the defendants, with others unknown to the complainant, has prevented complainant from carrying on its business, and if continued the complainant will be required to cease doing business; that during the past few years numerous strikes have occurred in various manufacturing industries in Chicago, and that it is common report and knowledge that numerous deadly assaults have been committed by strikers; that the effect of all this is to cause fear amongst mechanics and employees of complainant; that mechanics now engaged by complainant were employed with knowledge of and continued in the employment of complainant with knowledge of said strike; that they are working in opposition to the wishes of the officers and members of the defendant union; that said persons desire to continue in the employ of complainant without interference of the defendants and their associates; that the pickets single out and identify said employees and ascertain their home and address and the routes they travel to and from their labor, in order to waylay and assault said employees of complainant; that they fear they will be identified, pointed out and waylaid by the defendants; that some of the former employees are not actively engaged in the strike, but waiting for the strike to be settled that they may return to work; that said employees would not have quitted complainant's employment had they not been fearful of being assaulted and waylaid and beaten, as the result of such picketing; that others who have desired to enter complainant's employment have been deterred by reason of said system of picketing, and so complainant's employees are intimidated and coerced to leave complainant's business and employment; that such loss and injury to complainant's business, resulting from the proceedings of the defendants, are without remedy except

in equity. The bill prays for an injunction restraining defendants from in any unlawful manner interfering with, hindering, obstructing or stopping any of the business of complainant or its agents, in the city of Chicago or elsewhere, and also from entering upon the grounds or places where the employees of complainant are at work for such unlawful interference, and from unlawfully inducing, by threats, force or violence, any employees of complainant to refuse or fail to do their work or to leave the service of complainant, and from preventing any person from entering the employment of complainant, etc. The bill is supported by the affidavit of William A. Kirchberger, secretary and treasurer of the complainant.

"On March 18, 1905, the complainant, M. Born & Co., filed a petition in the cause setting up the filing of the bill of complaint; that an injunction was issued; that after the filing of the bill and issuing of the injunction the injunction was personally served upon Robert Noren, S. J. Stern, Mrs. Anna Sorenson, and upon the officers and business agents of Local Union No. 21, and upon other business agents and officers of other local unions; that printed copies of said injunction, in large type, were immediately placed and posted in conspicuous places, and upon the buildings and entrances to the different branches of the establishment of complainant, and at the entrance-ways to the meeting places of the different local unions, some of whose members are engaged in the strike; that from the issuance of said injunction until the 27th day of February, 1905, upon which date the said injunction was modified, there was little picketing and little or no violence or other unlawful interference with the business of the petitioner or with its employees then at work; that since the modification of the injunction picketing has been going on; that members of the local union patrol the streets near the places of business of petitioner; that the officers and agents, particularly Robert Noren, of the general executive board of defendant union,

business agent of different affiliated unions, and also Mrs. Ellen Lindstrom, business agent of said affiliated unions, and also G. H. Alexander, president of its affiliated unions, Anna Sorenson, business agent of its affiliated unions, and S. J. Stern, an officer of the district council, have advised strikers that the modification of the injunction permitted picketing of petitioner's place of business and other whole-sale tailors, and said modification also permitted the con-gregating of pickets upon the streets and alleys; that said persons above named have urged and incited the assembling of strikers in large numbers before the places of business of petitioner, and have continually incited and urged the congregating of such pickets in such manner and for the purpose of threatening the employees of petitioner; that said last named persons have been personally present in crowds of strikers, and have gone among such strikers and urged them to intercept the employees of petitioner, and urged personal violence, which is set forth in the petition; that on March 14, 1905, a large crowd, including such last named persons and also Albert Pettlekan, —— Braglin, Frank Kreston, Ernest F. Albrecht, Charles Anderson, J. B. Scott, William Dohney, Frank Sporka, William Bo-dett, Ralph Ferrero, W. Hankinson, H. Hovander and —— Hake, numbering four or five hundred people in all, assembled upon the streets, alleys and approaches to peti-tioner's place of business for the purpose of making and demonstrating against petitioner's business and for the pur-pose of intimidating the employees of petitioner as they were leaving its place of business, and that said crowd of strik-ers, including all the parties above named, hollered and jeered at the employees of petitioner as they were leaving its place of business, and said employees were frightened and intimidated by said threatening attitudes and actions of said defendants; that one James Sweet, a cutter of pe-titioner, who was employed by petitioner, while leaving its place of business, was followed by one Charles Anderson,

with five or six other strikers, to Franklin street, near VanBuren, in the city of Chicago; that Charles Anderson pointed out said Sweet to the crowd and shouted, 'There is Jim Sweet, the cutter; give it to him;' and that one of the other men who was with Charles Anderson seized said Sweet by the neck and threw him upon the ground, and that thereupon Anderson, with five or six other men, struck said Sweet; that another one of the crowd struck him, and that among said crowd so assaulting and beating said Sweet was a man by the name of James B. Scott.

"Petitioner further shows that on the 14th of March, 1904, as Philip Zuck, one of petitioner's employees, with several other employees of petitioner, was leaving his work, said crowd followed said employees, and three of said strikers slugged and struck said Zuck a great number of times and bruised him so that he had to be assisted back to petitioner's place of business, and thereafter, while he was returning to his home, said S. J. Stern, in company with a number of others, followed said Zuck; that with Stern was one Braglin; that said Braglin was stopped and prevented from assaulting said Zuck.

"Petitioner further represents that upon the 14th day of March, 1905, William Kirchberger, secretary and treasurer of petitioner, and one William Jungstrom, an employee, were leaving the business establishment of petitioner when a crowd of pickets followed said Kirchberger and Jungstrom, and when they had gone around the corner one of said strikers motioned to the other strikers, and one short man with a tan overcoat, whose name is unknown but who petitioner prays may be made a party to the petition when discovered, struck Jungstrom with his fist on the back of his head, knocking said Jungstrom forward, and that one of said strikers struck said Kirchberger a glancing blow in the face, breaking his glasses and knocking off his hat, and that among said strikers so assaulting said Kirchberger and Jungstrom was W. Dohney and —— Hake, and the said

strikers commenced to knock the said Kirchberger and Jungstrom about until a sergeant of police came up and dispersed the crowd, and thereafter said Kirchberger and Jungstrom returned to their place of business; that later Kirchberger started home, whereupon said strikers, including said Ellen Lindstrom and G. H. Alexander, followed said Kirchberger, calling him 'scab,' and that said Alexander pointed out said Kirchberger to the crowd and motioned to the crowd to follow said Kirchberger, whereupon a man by the name of Hake, who was with said Alexander and Lindstrom, struck said Kirchberger a blow in the stomach with his fist, knocking said Kirchberger in the arms of a policeman.

"The petitioner further shows that all of said above named persons were present in said crowd of strikers on said 14th of March, 1905, in front of and upon the streets leading to petitioner's place of business, and that they, each of them, took part in the threatening of the employees of the petitioner and in the acts of Alexander and Noren, Stern, Sorenson, Lindstrom, in advising said strikers and the members that the modification of the injunction permitted picketing the petitioner's place of business, and in inciting said pickets and strikers to the acts of violence above set forth; that said acts constituted a violation of said injunction and a contempt of court, and that all the parties so engaged, as aforesaid, knew of the issuance of the injunction and of the terms thereof, and that the violation of said injunction and contempt of the order of this court was knowingly and willfully committed by said named persons; that the petitioner annexes certain affidavits to the petition, setting forth specific acts of violence, and makes them a part of the petition. The petition prays that said persons be ruled to appear by a short day and answer the petition, and show cause why they, and each of them, should not be adjudged guilty of contempt of court and punished accordingly. Attached to said petition are the affidavits of William A. Kirchberger, James Sweet, J. W. Scharff, Philip

Zuck, William M. Jungstrom, Harry S. Beaumond, Michael Zuck, Maurice Feldman, Robert Seligman and Joe Kevarik.

"Appellant Frank Sporka filed an answer to the rule to show cause, denying the averments of the petition and affidavits. Appellants Charles Anderson, William J. Dohney and John Hake filed similar answers.

"On the hearing, in addition to the petition and affidavits in support thereof, and the respective answers and affidavits in support thereof, the court heard and considered oral testimony of witnesses as to the acts complained of, and on April 3 the court entered an order finding appellants guilty as charged in the petition and affidavits, and committing each of appellants to the county jail of Cook county for a period of four months or until discharged by due process of law, and discharged the other respondents to the petition.

"The cases are consolidated by agreement of parties for the purpose of hearing in this court."

William J. Dohney did not appeal from the judgment of the Appellate Court.

JACOB C. LEBOSKY, JOHN J. SONSTEBY, and DANIEL L. CRUICE, (WILLIAM SLACK, of counsel,) for appellants.

WHEELER, SILBER & ISAACS, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

It is first insisted by appellants that the petition fails to state a case of contempt and that the evidence fails to establish such case, in that there is a failure to set out the order of injunction, or any modification thereof, in the petition. This contention is based on a failure of the petitioner to recite at length in the petition the injunctional order. The petition merely recites that "complainant filed its bill of complaint against the Garment Workers of America, and certain other affiliated local unions, on the 28th

day of November; that an injunction was issued herein, as will more fully appear, reference thereunto being thereby especially had." If the contempt proceeding had been an original action instituted for the purpose of punishing a contempt which did not arise in connection with a pending cause, the pleading and the order would necessarily have to contain a statement of all the facts constituting the contempt. But where the contempt consists in the violation of some order of the court in a pending proceeding by one who is bound by such order, either as a party or otherwise, there is no necessity for setting out the previous order of the court in the petition. The court wherein the proceeding is pending will take judicial notice of all orders previously entered in the cause. The only matter about which the court was not fully advised was the alleged acts of appellants upon which the charge of contempt was based. The proceedings here for contempt were incidental to the general relief sought by the original bill. If the injunctional order had been recited in the petition it might have been said that the bill upon which such order was entered also should have been set out. Both the bill and the order for the injunction were before the court, and no necessity existed for again reciting them at large in the petition.

There is a distinction to be noted, in several respects, between practice in contempt proceedings in a court of chancery and proceedings to punish contempts in a court at law. Where the proceeding is in a court of equity, the contempt is punished as an incident to the enforcement of orders and decrees made in furtherance of the remedy sought. In cases of common law cognizance the contempt usually consists in some act in disregard of the power and dignity of the court, and which has a tendency to interrupt or disturb the due administration of justice. In cases of common law jurisdiction for contempt the defendant is tried upon his answer made to interrogatories filed. No other evidence is heard. If the answers prove false the remedy is by indictment for

perjury, but if the party purges himself of the contempt by his answer he will be discharged. In a proceeding for contempt for violation of orders in chancery the court will hear affidavits *pro* and *con,* and may also avail itself of any other legal evidence that will aid the court to determine the question according to right and justice.

Contempt proceedings are sometimes classified as criminal contempts and remedial contempts, and by some writers and judges they are classified as contempts cognizable in a court of equity and common law contempts, but whatever terms are employed to describe the two classes of contempt proceedings no confusion need exist as to the identity of the two classes and their respective characteristics. The earliest case which we have been able to find in this State where the difference in the procedure in the two classes of contempt cases is clearly pointed out is *Crook* v. *People,* 16 Ill. 534. That was a proceeding against Crook and others for a contempt in violating an injunction, and was therefore a remedial contempt, and cognizable in the court of equity that had issued the injunction. One of the questions there presented was whether the defendant should be discharged upon his answer. This court in disposing of that question, on page 537, said: "In *Underwood's case*, 2 Humph. 48, the court lays down the proper distinction between the course of practice in courts of law and equity, and mere contempts, and acts that are treated as contempts for the enforcement of orders and decrees, as part of the remedy sought. 'In cases of common law the defendant will be discharged if by his answer to interrogations filed he make such a statement as will free him from the imputed contempt, and that opposing testimony will not be heard,' and 'in cases in chancery the truth of the defendant's statement in reply to interrogatories filed may be controverted on the other side and the whole matter be inquired into and ascertained by the court.' And this is fully sustained in the case of Yates, (4 Johns, 375,) where the judgment

is held conclusive of the contempt upon a *habeas corpus*
and a strong doubt expressed of a power to revise upon
appeal or writ of error. (Ibid. p. 353.) Lord Mansfield
recognized the same distinction in *The King* v. *Vaughn*, 2
Douglass, 516, where he states the practice in chancery to
be, to take testimony on both sides. (4 Black. Com. 288.)
Blackstone notes, also, the distinction that exists as to the
nature and object of proceeding as for a contempt. Where
the contempt is by a party to the suit and committed by dis-
obedience to any rule or order, such as payment of costs
or money, the proceeding for contempt is in the nature of
a civil execution on the decree, to enforce payment by per-
sonal process. Proceedings for contempt for breach of in-
junction are of a kindred nature, to preserve the subject
matter of the dispute in the same condition it is, or such
condition as will enable the court to administer full relief
and justice eventually.—4 Black. Com. 285; see Dane's
Abrid. chap. 220, art. 4; 1 Harrison Chancery, 202."

In *Buck* v. *Buck*, 60 Ill. 105, the proceeding was against
the appellant by attachment for contempt in not complying
with a decree of the circuit court of Kane county in a suit
for divorce ordering him to support and educate an adopted
child of the parties. Interrogatories were filed, to which
the defendant made answer, and the court ruled that not-
withstanding the answer the defendant must purge himself
of the contempt in open court. The ruling of the court in
requiring the defendant to be sworn and in hearing other
evidence than the answer of the defendant was assigned
as error, and in disposing of that assignment of error this
court, on page 106, said: "A difference obtains between
the practice, in this respect, in courts of law and in courts
of equity. In the former, if the defendant clears himself
by his answer he will be discharged and the complaint totally
dismissed, whereas in the courts of equity, after the party
has answered the interrogatories, his answer may be con-
tradicted and disproved by the adverse party. The attach-

ment for this species of contempt, the disobedience of an order to pay money, is to be looked upon rather as a civil execution for the benefit of the injured party, though carried on in the shape of a criminal process for a contempt of the authority of the court. (4 Black. Com. 288; *Crook v. People,* 16 Ill. 534.) It is a singular mode of trial, admitted in this particular instance of contempt, where ordinary rules governing criminal trials do not apply, and we see no sufficient objection in this case to the adverse party having resort to the testimony of the defendant, as might be done in a civil case. No replication to the answer was necessary, as claimed. The practice of the courts of chancery recognizes no such thing as a replication to an answer to interrogatories filed in such a proceeding as this. We hold there was no error in this ruling of the court."

*Leopold* v. *People,* 140 Ill. 552, was a bill in chancery filed for the settlement of the affairs of a partnership. The court appointed a receiver and ordered the several partners to turn over to the receiver all of the partnership assets under the control of the respective partners. Subsequently, by an intervening petition of a creditor, it was brought to the notice of the court that Henry and Charles M. Leopold had refused to obey the order and refused to appear before the master to whom the cause had been referred and submit to an examination, as ordered by the court. Upon a hearing the court gave them an opportunity to still obey the order and be discharged, but they refused. They were each fined $200 and ordered to stand committed until the fine was paid, unless sooner discharged by order of the court. The judgment was affirmed by the Appellate Court, and in this court a motion was made to dismiss the cause for want of jurisdiction, the argument being that it was a criminal action, and for that reason no appeal would lie from the Appellate Court to this court, or, it was argued, if the cause be not criminal, no appeal lies to this court without a certificate of importance from the Appellate Court, the judg-

ment being less than $1000. In disposing of that motion this court, speaking by Mr. Justice Wilkin, said (p. 556) : "The proceeding in the superior court was to compel obedience to an order made in a chancery proceeding for the benefit of the creditors of the insolvent firm, and is therefore a civil action, though in some respects carried on as a criminal proceeding,"—citing *Crook* v. *People, supra,* and *Buck* v. *Buck, supra.* The motion to dismiss the appeal was overruled on the ground that it was a civil action in chancery, and that an appeal in that class of cases would lie from the Appellate Court to this court without reference to the amount involved. The judgment of the Appellate Court was affirmed.

*People* v. *Diedrich,* 141 Ill. 665, was a contempt proceeding growing out of the violation of an injunction which had been issued to restrain the infringement upon the rights of complainants as owners of a patent known as the "Ruttan furnace." The court had perpetually enjoined Diedrich from manufacturing or being interested in the manufacture of the particular kind of furnace in question. Afterwards an affidavit was filed charging Diedrich with violating said injunction by manufacturing, advertising, selling and offering for sale said Ruttan furnaces. Diedrich appeared and filed his answer under oath, denying that he had been guilty of a breach of said injunction, and thereupon moved to discharge the rule against him. This motion was overruled and the cause referred to a master to take and report the evidence. To his report exceptions were filed by the defendant, which were overruled and an order entered imposing a fine of $300 upon the defendant, from which an appeal was taken to the Appellate Court. The decree was there reversed and the cause remanded, with directions to discharge the rule, and from this judgment of the Appellate Court the People appealed to this court. Diedrich entered a motion in this court to dismiss the appeal on the ground that the proceeding was criminal, and was therefore

not appealable on behalf of the People. In disposing of that question this court, again speaking by Mr. Justice Wilkin, on page 669, said: "Prosecutions for contempt are of two kinds. When instituted for the purpose of punishing a person for misconduct in the presence of the court or with respect to its authority or dignity it is criminal in its nature. When put upon foot for the purpose of affording relief between parties to a cause in chancery it is civil,—sometimes called remedial. Numerous authorities could be cited in support of this distinction, but the decisions of this court leave no doubt on the subject,"—citing *Crook* v. *People, supra, Buck* v. *Buck, supra,* and *Leopold* v. *People, supra.* "Though sometimes entitled in the name of The People *ex rel.* etc., it may properly be in the names of the parties to the original bill. (*People ex rel.* v. *Craft,* 7 Paige, 324.) The right to appeal is in either party, as in other cases in chancery. The motion to dismiss this appeal will accordingly be overruled."

In the late case of *O'Brien* v. *People,* 216 Ill. 354, a similar ruling was made and the authority of the cases above cited re-affirmed. That was a bill for an injunction by the Kellogg Switchboard and Supply Company against certain labor organizations, seeking to enjoin them from unlawfully interfering with the employees of the complainant. A petition was afterwards presented charging a violation of the injunction by O'Brien and others, and upon a hearing the court found O'Brien and others guilty of contempt and imposed a fine of $100, each, upon them. Subsequently another petition was filed charging said O'Brien and others with again violating the writ of injunction, and on the hearing of that petition some of the defendants were fined and others were committed to the county jail for periods ranging from ten to sixty days. An appeal was prosecuted to the Appellate Court, where the judgment below was affirmed, except the sentence of Mashek was reduced from sixty to thirty days. The cases were appealed to this court,

and it was earnestly urged that the proceeding was criminal
in its nature, and that therefore the defendants should have
been discharged upon their answer.   In disposing of that
contention, on page 368, this court said:   "It is again in-
sisted with much earnestness that this proceeding is crim-
inal in its nature, and therefore the defendants below were
entitled to be discharged upon their sworn answer, and if
their answer was not sufficient they could only be punished
after they had been tried and convicted by jury.   Proceed-
ings for contempt of court are of two classes: those which
are criminal in their nature and those which are designated
as purely civil remedies.   When the contempt consists of
something done or omitted in the presence of the court tend-
ing to impede or interrupt its proceedings or lessen its dig-
nity, or out of its presence in disregard or abuse of its pro-
cess, the proceeding is punitive or criminal, and the penalty
is inflicted by way of punishment for the wrongful act and
to vindicate the authority and dignity of the people, as rep-
resented by their judicial tribunals.   In such cases the ap-
plication for attachment may be made in the original cause,
yet the contempt proceeding will be a distinct case criminal
in its nature.   Cases of this kind are clearly distinguished
from cases where the parties to a civil suit, having the right
to demand that the other party do some act for their benefit,
obtain an order from a proper court commanding the act
to be done, and upon refusal the court, by way of executing
its orders, proceeds as for contempt, for the purpose of ad-
vancing the civil remedy of the other party to the suit.   In
this class of cases, while the authority of the court will be
incidentally vindicated, its power has been called into ex-
ercise for the benefit of a private litigant and not in the
public interest, merely.   If imprisonment is ordered it is
not as a punishment, but to the end that the other party
to the suit may obtain a remedy for the advancement of his
own private interest and rights which he could not other-
wise maintain.—*Loven* v. *People,* 158 Ill. 159; *Crook* v.

*People,* 16 id. 534; *People* v. *Diedrich,* 141 id. 665; *Lester* v. *People,* 150 id. 408; *Leopold* v. *People,* 140 id. 552."

In *Franklin Union* v. *People,* 220 Ill. 355, it was held that an alleged contempt committed out of the presence of the court, in violation of an injunction, might be brought to the attention of the court by an affidavit setting out the facts, and that a petition is unnecessary, but if a petition is filed for that purpose it need not have the particularity of an indictment, and is sufficient if it apprised the defendant of the charge made.

In *Flannery* v. *People,* 225 Ill. 62, which was another case of contempt for the violation of a "strike injunction," it was held that a contempt proceeding for the violation of a writ of injunction might be commenced either by petition or affidavits, and it was there held that it was sufficient if, either by petition or sworn statements, the matter complained of is brought to the attention of the court. It was also held in the *Flannery case* that the degree of proof required to establish a remedial contempt was the same as is required in any other civil proceeding, and that the rule requiring proof beyond a reasonable doubt, which obtains in criminal cases, had no application to contempt proceedings in chancery.

From the foregoing review of the authorities in this State the following rules applicable to civil contempt may be deduced: Such proceedings may be commenced by petition or affidavit filed in the court having jurisdiction of the cause wherein the order was entered, the violation of which forms the basis of the contempt proceeding; whether commenced by petition or affidavit, the alleged contempt need not be set out in the petition or affidavit with the same particularity as is required in a criminal information or indictment, the rules in this regard applicable to other chancery pleading will control; it is not necessary to set out in detail the prior orders and proceedings in the cause in which the contempt is committed, since the court will

take judicial notice of its own orders and records in the cause; on the hearing of a civil contempt the court is not confined to the evidence afforded by the defendant's sworn answer, but may hear affidavits, or any other proper testimony, to enable the court to determine the truth of the matter according to justice and equity; the cause may be carried on in the name of the original complainant in the chancery case, or in the name of the People on the relation of the complainant; regardless of how the case may be commenced,—that is, whether by affidavit or petition,— and regardless of how the case is docketed,—that is, whether in the name of the complainant or the People of the State of Illinois against the contemnor,—the case is, from its inception to its conclusion, in all of its procedure, essentially a civil chancery proceeding, conforming itself, in its pleadings, character and quantity of proof required, and in its course through the appellate tribunals, to the rules and practice applicable to other chancery proceedings.

It would be foreign to our purpose and entirely outside the case in hand to attempt to elaborate the rules of law applicable to the other class of contempts, known as criminal or common law contempts. We will content ourselves by referring to a few cases where criminal contempts have received the consideration of this court. *Clark* v. *People,* Breese, 340, is perhaps the first case of that character which came before this court. *Stewart* v. *People,* 3 Scam. 395, is an illustration of a criminal contempt for publishing an article in *The Chicago American* derogatory to a court concerning a murder case then pending for trial in said court. The leading·case in this State is *People* v. *Wilson,* 64 Ill.· 195, where a criminal information was filed in this court by Washington Bushnell, then the Attorney General of the State, against Charles L. Wilson, as proprietor, and Andrew Shuman, as editor of *The Chicago Evening Journal,* charging the defendants with having published a certain scandalous and libelous article respecting this court in connection

230—13

with the case of *People* v. *Rafferty,* which was then pending in this court on a writ of error, involving a charge of murder. The article, which is set out in the information, reflected upon the integrity of this court, and the defendants were found guilty and adjudged to pay a fine into the State treasury. *Dahnke* v. *People,* 168 Ill. 102, is a case of criminal contempt, where the contempt consisted in locking the judge out of his court room during an interval of the sessions of his court, and it was held a criminal contempt, which was not justified by the order of the county commissioners.

We do not deem it necessary to pursue the discussion of the distinction between the two classes of contempt cases further. The cases above cited, illustrative of each class, together with the authorities cited in them in this and other jurisdictions, seem to us to establish the distinction so clearly that there can be no doubt, under the authorities, that the case at bar must be regarded as a civil or remedial contempt proceeding. Appellants, in effect, admit that this is true by bringing this case here by appeal instead of by writ of error. This court has no jurisdiction of a criminal case by appeal. If, as appellants contend, it is a criminal case, it should have been brought up on writ of error; but, as we have seen, it is not in any sense a criminal case, hence it is properly brought here by appeal.

Appellants insist that the facts are open for our consideration and that the evidence does not support the decree of the court below. It is true that in this class of cases this court is not bound by the finding of the trial court nor by the affirmance of the judgment by the Appellate Court as to the facts, but the same are open for determination in this court. But this court will not reverse because the finding is not supported by the evidence unless the finding is against the clear preponderance of the testimony. Upon looking into the evidence we find that these appellants are each accused of assaulting and beating certain em-

ployees of M. Born & Co., in violation of the injunctional order of the court; that appellant Anderson is accused in connection with an attack upon James Sweet, and appellant John Hake is charged in connection with an attack upon William A. Kirchberger, and appellant Sporka is accused of striking a man by the name of Jungstrom. All of the assaulted parties were employees of M. Born & Co., and that they were assaulted and beaten for no other assignable reason than that they were employees of M. Born & Co. appears from the uncontradicted evidence of the record. The only question about which any controversy can arise is as to the identity of the parties who committed the assaults. Upon this question there is a conflict of evidence. While this is true, there is positive and direct evidence in the record connecting each of appellants with the assault charged against him. We are of the opinion that the evidence clearly preponderates in favor of the finding of the court below, and that there is no reason for disturbing the decree because it is not supported by the evidence.

All of the other assignments of error, except one, hereinafter specifically mentioned, have been disposed of adversely to the contention of appellants by the authorities above cited, and to take them up and discuss them in detail would be merely to reiterate what we have already said.

It is finally urged by appellants that the punishment inflicted upon each of them is unconstitutional and void, in that it is disproportionate and oppressive. Appellants cite a number of provisions of the Criminal Code where certain offenses, such as assault and assault and battery, are defined and the punishment fixed by a fine of not less than $3 nor more than $100, and from this and other statutes supposed to bear some sort of analogy to the offenses committed by appellants, the argument is drawn that the punishment inflicted upon appellants is unconstitutional and void because it is a greater punishment than the criminal statutes imposed for like offenses. For the reasons already pointed out

these several statutes have no application whatever to the appellants' case. The law is well settled that a court of chancery may impose a fine alone for the violation of an injunction and commit the party until the fine and costs are paid, or, in its discretion, may fix a definite period of imprisonment, either with or without a fine. The court granting the injunction is necessarily invested with large discretion in enforcing obedience to its mandate, and upon proceedings for attachment for its violation the extent of the fine and imprisonment to be inflicted as a punishment for the contempt rests in the sound legal discretion of the court itself. Courts of appellate jurisdiction are exceedingly averse to interfering with the exercise of such discretion, and will not ordinarily reverse the action of the inferior courts in such matters. High on Injunctions, sec. 1458, and cases there cited.

There is no reversible error in this record, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*