either in law or equity, for the creditor is deprived of the most beneficial use of the money due him; whereas, where the creditor hinders or prevents the debtor from earning the legal rate by requiring that the investment shall be preserved and kept intact until the controversy is determined, the reason of the rule fails, and therefore the rule itself ceases to have any application to the circumstances of the case, in view of a court of equity. How can a plaintiff justly claim as damages interest upon a fund which he demanded or required that his debtor should not employ or invest in a way to earn the interest?

As a general rule, equity follows rules of law governing the allowance of interest. Campbell v. Meiser, 6 Johns. Ch. 24. And yet a court of equity will allow interest in cases where it could not be recoverable at law. Woerz v. Schumacher, 161 N. Y. 537, 538, 56 N. E. 72. General rules are subject to exception, and where the principle or reason upon which a general rule is founded does not exist in the particular case, the rule ought not to be inexorably applied in such case when the party seeks equitable relief. And if it is not right that the defendant should be chargeable with the interest claimed, then both justice and equity require the court to refuse it to the claimant.

Interest will therefore be allowed at the rate of 3 per cent., as fixed by the terms of the deed, up to the day of the breach, and thereafter, up to the day of the entry of judgment, at 4 per cent. per annum, in accordance with agreement made between the trust company and the treasurer of the city of Buffalo.

---

## In re SAUNDERS' ACCOUNT.

### In re BARNARD.

(Supreme Court, Appellate Division, Second Department. December 3, 1908.)

1. ESTOPPEL (§ 90*)—EQUITABLE ESTOPPEL—SILENCE.

    An estoppel does not require the element of designed fraud, but may arise from silence as well as words, where there is a duty to speak and the party upon whom the duty rests has an opportunity to speak, and, knowing the circumstances requiring him to speak, keeps silent.

    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 285; Dec. Dig. § 90.*

    For other definitions, see Words and Phrases, vol. 3, pp. 2494, 2495; vol. 8, p. 7654.]

2. ESTOPPEL (§ 70*)—EQUITABLE ESTOPPEL—SILENCE.

    Where a son, who was engaged in a mercantile pursuit, was indebted to his father, that the father remained silent at an interview between the son and one of the son's creditors, in which the creditor declared that he would extend further credit to the son if he would make a disclosure of his financial standing by producing his books, did not estop the father to assert his claim after the death of the son, in the absence of a showing that the son's books did not disclose an indebtedness due the father.

    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 184; Dec. Dig. § 70.*]

Appeal from Surrogate's Court, Kings County.

In the matter of the settlement of the accounts of Ebenezer M. Saunders, as executor of Franklin E. Saunders, deceased. From a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judgment of the Surrogate's Court (57 Misc. Rep. 273, 109 N. Y. Supp. 316), overruling the objections of William H. Barnard, a creditor, such creditor appeals. Reversed, and rehearing ordered.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

L. H. Hall (Edmonds Putney, on the brief), for appellant.
Luther G. Billings, Jr., for respondent.

JENKS, J. This is an appeal from a decree of a Surrogate's Court after a trial whereon the objections of Barnard, a creditor, to an executor's account were overruled and the account was settled. By stipulation the sole issue tried was whether a claim of the executor against the estate should be allowed as against Barnard's debt. Barnard's claim as allowed by the executor is for $38,000. The claim of the executor is for $8,900. The funds of the estate are insufficient to meet the claims proven and allowed.

The objection of Barnard rests upon estoppel. The executor was the father of the decedent, who was the head of a firm and the principal partner therein. Barnard had sold the firm merchandise, and the firm's debt therefor to him on January 1, 1906, was about $40,000. In that month Barnard threatened to liquidate the debt. The father of the decedent was not interested in the business of the decedent, but at that time the decedent personally owed his father about $8,000. The affairs of the firm were in bad condition. In the said month of January the decedent and his father called to see Barnard. At the interview the decedent said to Barnard that it would be a hardship to ask liquidation, it was not necessary, he was solvent, and he owned more merchandise and bills receivable than debts. His debts and the names of the creditors were gone over. No mention was made of the personal indebtedness of the decedent to his father, then or afterwards. Thereafter Barnard forebore as to the existing claim, and sold additional merchandise to the decedent on credit. This transaction seems to have involved small partial payments on the old debt.

The appellant, as I have said, contends that the father is now estopped, as to Barnard, from asserting his claim against the estate of the decedent. If the question of estoppel depended upon the interview alone, I think that the evidence sustains the contention. The contrary conclusion of the learned surrogate is drawn from the premises that the inquiry of Barnard related solely to the condition of the decedent's firm, that the statements of the decedent in the presence of his father were limited to the firm's affairs, that these representations were substantially correct, that such matters were not the concern of the father, and that his silence as to his son's personal debt to him, when such obligations were entirely without the scope of the inquiry and the statements, could not be held as an estoppel. But the father knew that his son was substantially the firm, that the interest of the sole other partner was very slight, and that it counted but little in the matter of the extension of credit. He had been told by the decedent that his affairs were in a precarious condition, although he was solvent, which the father but hoped was the fact. He testifies that he was interested

in having his son obtain further credit, that he knew that Barnard's inquiry was to find out what likelihood there was of payment, and that he presumed that Barnard wished to know the condition of all his son's affairs. He made to Barnard "a strong plea not to push the boy, as he put it, but to give him a chance," saying "that he was good and would be able to pay us up"—"not to push the account, but allow it to go on." Perhaps he did not hear Barnard ask any specific question as to the personal indebtedness of the decedent. Perhaps Barnard did not put the precise question; but Barnard testifies, and the father does not deny, that after the son named the creditors of the firm Barnard asked the decedent "if that included all he owed, and he said it did." And McIlroy, the secretary for Barnard, testifies without contradiction that the father sat silent when his son said "that was all he owed and there was nothing outside of what was entered on his books."

It is not disputed that the decedent told Barnard at this time that he was about to buy out his sole partner. The business was not a large one. The balance sheet of January 1, 1906, shows transactions of about $70,000, and the total assets amount to but $71,000, as against nearly $68,000 indebtedness. Certainly the father could not have considered that a personal obligation of the head and front of the firm for $8,000, especially as the partner was about to go out, would not be material to the decision of Barnard as to whether he would forbear and extend further credit. An estoppel does not require the element of "designed fraud." It "may arise from silence as well as words, * * * where there is a duty to speak, and the party upon whom the duty rests has an opportunity to speak, and, knowing the circumstances requiring him to speak, keeps silent." Thompson v. Simpson, 128 N. Y., at page 289, 28 N. E., at page 632. "The equitable rule is that he who does not speak, when conscience and a just regard to the rights and interests of others require him to speak, shall not be permitted afterwards to assert his claim to their injury." L'Amoreux v. Vandenburgh, 7 Paige, 321, 32 Am. Dec. 635, cited in Kingman v. Dunspaugh, 19 App. Div., at page 550, 46 N. Y. Supp., at page 605. See, too, Erie County Savings Bank v. Roop, 48 N. Y., at page 298.

But the vital question in this case has not been cleared up; for it appears that Barnard at the interview said to decedent in the presence of the father that if "what he told me was so regarding his accounts and merchandise, and the debts were verified by having my secretary go over the books, we might decide not to push the account," and that he thereafter sent out his secretary and obtained a statement purporting to come from the books. The father then had no reason to suppose that Barnard proposed to shape his future course solely from the representations made at the interview, but he had the right to infer that the course would depend upon the condition of affairs disclosed by the books. If the father knew that the books would disclose that debt, then I think that he was not estopped by his conduct at the interview. Now the statement taken from the books by Barnard's secretary and read in evidence does not establish conclusively the scope of the entries in the books; for although this statement contains mainly

the accounts of the copartnership business, yet it also contains memoranda of certain personal assets, and the proof is that the secretary of Barnard did not make any investigation outside of the books. We cannot infer, then, that the books did not contain a statement of the personal affairs of the members of the firm, and there is evidence that the father went over the books after the original indebtedness of his son to him had been incurred. For these reasons I think that there should be a rehearing before the surrogate.

Decree reversed, and a rehearing ordered before the surrogate, under the stipulation in the present record, with costs. All concur.