(No. 14606.—Writ awarded.)
THE PEOPLE *ex rel.* Edward J. Brundage, Attorney General, Petitioner, *vs.* CHARLES W. PETERS, Sheriff, Respondent.

*Opinion filed October 21, 1922—Rehearing denied Dec. 8, 1922.*

1. CONTEMPT—*distinction between civil and criminal contempts.*
Refusal to obey an order incident to the enforcement of a judg-
ment or decree entered in furtherance of the remedy sought in liti-
gation is a civil contempt, while a criminal contempt is an act done
or omitted in the presence of the court to interrupt its proceed-
ings or lessen its dignity and authority or out of the court's pres-
ence in disregard of its authority, and in such cases the application
for punishment may be made in the name of the people; but there
is no difference in the power of the court to administer punish-
ment in the two classes of contempts or in the penalty that may
be inflicted.

2. SAME—*power to punish for contempt is inherent in all courts.*
The power of courts to adjudge punishment for contempts does not
depend on constitutional or legislative grant but is inherent in all
courts as necessary for self-protection and an essential auxiliary
to the administration of the law.

3. SAME—*refusal of school board to obey judgment of ouster is
a civil contempt.* The refusal of a board of education to obey a
judgment of ouster in a *quo warranto* proceeding requiring them
to turn over their offices, books and records to the legally consti-
tuted board and to the city superintendent appointed by the lawful
board is a civil contempt.

4. SAME—*when proceeding is for civil contempt.* A proceed-
ing to punish a party for refusing to perform an act he was or-
dered to perform and which is for the benefit of or will advance
the remedy of the other party to the suit is for a civil contempt.

5. SAME—*Governor cannot pardon a party adjudged guilty of civil contempt—mandamus.* The Governor cannot exercise any of the powers of the judicial department unless the authority is clearly granted by the constitution, and where a board of education has been adjudged guilty of contempt for refusal to obey a judgment of ouster entered against them the Governor has no authority to set aside the action of the court by issuing a pardon, and where a pardon is issued the sheriff may nevertheless be compelled, by writ of *mandamus,* to carry out the judgment and sentence for contempt.

ORIGINAL petition for *mandamus.*

EDWARD J. BRUNDAGE, Attorney General, (ANGUS ROY SHANNON, of counsel,) for petitioner.

CHARLES C. LEFORGEE, and WERNER W. SCHROEDER, (RALPH W. CONDEE, and CHARLES C. ROE, of counsel,) for intervening petitioners.

JOHN J. HEALY, (JESSE HOLDOM, of counsel,) for respondent.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an original petition for writ of *mandamus,* filed by leave in this court, praying that the writ be awarded commanding Charles W. Peters, sheriff of Cook county, to take into custody certain persons named who had been adjudged guilty of contempt for refusing to obey the order and judgment of the circuit court. Some of them had been sentenced to pay fines and to be imprisoned in the county jail, and others to pay fines, only.

It seems unnecessary to set out a detailed statement of the litigation preceding the judgment for contempt. It is sufficient to say the contempt proceeding grew out of a controversy in the city of Chicago as to what persons lawfully constituted the board of education. Two sets of individuals claimed to be the legal board, which boards for convenience may be designated as the old board and the new board. After it had been adjudicated in *People v. Davis,* 284 Ill. 439, that the old board was the legal board, it in March,

1919, elected Charles E. Chadsey superintendent of the city schools for a period of four years from March 17, 1919. Subsequently the new board, claiming to be the legal board by virtue of a new appointment by the mayor, employed Peter A. Mortenson as superintendent for four years from May 28, 1919. *Quo warranto* proceedings were instituted against the new board and also against Mortenson. Judgments of ouster were rendered against both, and the office rooms, books, papers and records of the superintendent were ordered to be turned over to Chadsey, who was adjudged the lawful superintendent of the city schools. About the time, or shortly before, the judgment was rendered, the same persons who had been ousted were re-appointed by the mayor as the board of education, and the legality of that appointment has not been disputed. They refused to recognize and obey the judgment, and proceedings for contempt were instituted against them before the judge who rendered the judgment. On a hearing they were adjudged guilty and punishment assessed. They sued out a writ of error to the Appellate Court for the First District, and that court affirmed the judgment of conviction and issued its mandate, which was duly filed in the office of the clerk of the circuit court and certified copies were given to the sheriff and demand made on him to execute the mandate and judgment. After the judgment of affirmance by the Appellate Court, and before the mandate was filed, the Governor granted the parties adjudged guilty of contempt a full, complete and unconditional pardon and released them from the imprisonments and fines adjudged against them. That is the reason the sheriff, in his answer to the petition, sets up for refusing to execute the judgment. The Attorney General has demurred to the answer, and the sole issue presented is whether the Governor had the authority to pardon and release contemners. On motion of the contemners they were granted leave to file a brief in addition to the brief filed by respondent.

305—15

For some purposes most authorities classify contempts as civil and criminal. Where the contempt proceedings are an incident to the enforcement of the judgments and decrees entered in furtherance of the remedy sought in litigation they are usually called civil contempts. Criminal contempts are said to be something done or omitted in the presence of the court to interrupt its proceedings or lessen its dignity and authority, or out of the court's presence in disregard or abuse of its authority. (*Hake* v. *People,* 230 Ill. 174.) The principal reason for the classification seems to arise out of the form of the proceedings in the two classes of cases. In the one case the proceedings may be an incident to a pending suit and serve two purposes. In addition to vindicating the authority and dignity of the court the proceedings may also advance the relief granted a party to the litigation. In the other class of contempts the application for punishment may be made in the name of the people. There is no difference in the power of the court to administer punishment in the two classes of contempts or in the penalty that may be inflicted. "The dividing line between the acts constituting criminal and those constituting civil contempts becomes indistinct in those cases where the two gradually merge into each other. In those cases contempts have been classified and punished by the courts in some jurisdictions as criminal contempts and in others as civil contempts. Some courts adhere to the rule defining them as civil or criminal contempts according to the character of the suit in which they occur, designating them as civil contempts if the original suit is a civil suit and as criminal contempts if they arise in an original suit criminal in form. In most cases where they thus rest on the boundary line they are both civil and criminal contempts, and so far as the rights of the contemners are concerned may be punished as either." (*People* v. *Elbert,* 287 Ill. 458.) All the authorities agree that the power of courts to adjudge punishment for contempts does not depend on constitutional

or legislative grant, but is inherent in all courts as necessary for self-protection and an assential auxiliary to the administration of the law. *People* v. *Wilson,* 64 Ill. 195; *Dahnke* v. *People,* 168 id. 102; *Hale* v. *State,* (Ohio) 36 L. R. A. 254.

Respondent concedes that in the class of contempts denominated as civil the executive has no power to pardon a person adjudged guilty, but argues that the constitution confers the power to pardon in criminal contempts. In our view the contempt here involved belongs in the class denominated civil contempts, and it is therefore not essential to determine whether the Governor has power to pardon persons convicted of criminal contempts. We may say that question has been before courts for decision in very few cases, probably because executives have seldom attempted to exercise the power. Tennessee, Louisiana and Mississippi courts have held the executive has power to pardon for criminal contempt, (*Sharp* v. *State,* 102 Tenn. 9; *State* v. *Sauvinet,* 24 La. Ann. 119; *Ex parte Hickey,* 4 S. & M. 751;) while Texas has held the contrary. (*Taylor* v. *Goodrich,* (Texas) 40 S. W. 515.) So far as we are advised, these are the only cases passing on the question where it was necessary to the decision. In *State* v. *Verage,* (Wis.) 187 N. W. 830, the court considered the power of the Governor to pardon one convicted for contempt. The contempt was the violation of an injunction granted in a suit by an employer against certain labor unions and various individuals. The contemner was not adjudged guilty of contempt for failing to perform an act he had been ordered to perform but for committing an act he had been ordered not to commit. The court held the contempt was of the class denominated civil contempts, and after holding the Governor had no power to pardon the party convicted, said it was unnecessary to decide whether he had the power in criminal contempts but that the question was a very important one; that it was unsettled in this country, and for these reasons

the court had devoted much time to its consideration and felt warranted in discussing it, which it did elaborately. The court said the reasoning in the Tennessee, Louisiana and Mississippi cases was unsound, and expressed the opinion, after reviewing the authorities and quoting from the Wisconsin constitution, which is in all material respects the same as ours, that the Governor has not the power to pardon for contempts, whether civil or criminal. The same conclusion was arrived at by the Federal circuit court of appeals in *In re Nevitt,* 117 Fed. 448; but that question was not necessary to the decision of the case, and a contrary view was expressed by Judge Blatchford in *In re Mullee,* 7 Blatch. 23; where, also, the question was not directly involved. The question is a very important one, but whatever our views may be, we deem it prudent to withhold any expression of them until a case is presented directly involving the question for decision.

The proceeding for contempt here involved was in connection with the *quo warranto* suit, in which the election of Mortenson as superintendent of schools was held illegal, a judgment of ouster entered and Chadsey ordered restored to the office and duties of superintendent. The new board, which elected Mortenson, appears to have obtained possession of the office rooms, books, papers and records of the superintendent of schools, and the judgment ordered Chadsey re-instated, and the contempt proceeding was instituted to enforce that judgment. The Attorney General in his brief, after reciting the facts above stated, says the punishment was not in aid of a party litigant and was not remedial. Respondent construes this to be an admission that this is a criminal contempt and bases the argument on that theory. The statement of the Attorney General cannot control the determination whether this is a civil or criminal contempt. We believe the authorities universally hold that a proceeding to punish a party for refusing to perform an act he was ordered to perform, which was for the benefit

of or would advance the remedy of the other party to the suit, is for a civil contempt. The most frequent illustrations of civil contempts are in the violations of injunctions by doing an act the party was ordered not to do or refusing to perform an act a party was ordered to perform. We are unable to see any distinction between the contempt here involved and a contempt for violation of an injunction. In both cases the proceeding is in connection with the original suit, and is for the purpose of advancing the remedy of the other party as well as to vindicate the authority of the court and enable it to administer the law.

But respondent says Chadsey voluntarily resigned the office of superintendent of schools before the contempt proceedings were instituted, and therefore the enforcement of the judgment of ouster could not be of any benefit or advantage to him, and the proceedings should be considered as purely criminal. A few days before the decision holding Chadsey was legally elected and entitled to the office of superintendent of schools for the term for which he was elected and that Mortenson's election was illegal and he had no right or title to the office and Chadsey was ordered re-instated, the contemners were again appointed by the mayor members of the board of education, and the legality of that appointment has never been disputed. They refused to obey the judgment and order of the court to restore Chadsey to the office of superintendent but assumed to elect Mortenson as associate superintendent and adopted rules clothing him with the authority and duties of superintendent. Chadsey and his counsel made repeated efforts and demands that the judgment of the court be carried out and he be re-instated in his position and clothed with the duties of the office. By taking the authority and duties of the office from him and conferring them on Mortenson the contemners willfully and purposely ignored and refused to obey the judgment and order of the court. It seems palpable that contemners' acts were intended to de-

feat the judgment and were a defiance of it. Chadsey, finding himself ignored and prevented from the enjoyment of his office and the discharge of its duties, sent his written resignation, dated November 26, 1919, to the board. The contempt proceedings were instituted December 4, 1919. To say that under these circumstances the character of the proceedings was changed from civil contempts to criminal contempts and that the pardon was valid would be, in effect, giving approval to the acts of the board intended to defeat the judgment and force Chadsey out and Mortenson in as superintendent. It is perfectly plain the actions of the board of education were clearly in defiance of the judgment and were taken with the purpose of defeating it. The board had the legal right, if it thought the judgment was erroneous, to have it reviewed by the higher courts, but it did not have the right to refuse to obey it and when adjudged guilty of contempt apply to the Governor to set aside the action of the court by issuing a pardon. The power to punish for contempt of court is in the judicial department of the government, and no power is conferred on the executive department to review, set aside or annul in any manner the judgment of the court. If the contempts here involved were, as we hold, civil contempts, then it is conceded the constitutional grant of power to the Governor to grant pardons after convictions "for all offenses" does not apply. The Governor cannot exercise any of the powers of the judicial department unless the authority is clearly granted by the constitution.

The court was warranted in punishing the contemners for contempt and the Governor did not have the power or authority to issue a valid pardon. The pardon being void, it was the duty of respondent, as sheriff of Cook county, to execute the judgment.

The demurrer to respondent's answer is sustained and the writ awarded as prayed.        *Writ awarded.*