The People of the State of Illinois ex rel. Bernard F. Burgeson, Defendant in Error, v. West Chicago Park Commissioners et al., Plaintiffs in Error.

Gen. No. 37,205.

388

Opinion filed June 11, 1934. Rehearing denied June 25, 1934.

KIRKLAND, FLEMING, GREEN & MARTIN and FRANCIS J. VURPILLAT, for plaintiffs in error; HOWARD ELLIS and DAVID FISHER, of counsel.

MICHAEL F. RYAN, for defendant in error.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Bernard F. Burgeson filed his verified petition against the West Park Commissioners, its officers and the officers of the Civil Service Board of Park Commissioners, praying that a rule be entered against them to show cause why they should not be adjudged in contempt of court for their failure to comply with a

writ of mandamus theretofore issued, requiring them to recognize and assign the petitioner to duty as a civil service employee of the West Park Commissioners. A rule was entered accordingly. Afterward respondents filed their joint and separate answer. There was a hearing before the court without a jury. The respondents were adjudged guilty of contempt of court and were ordered to reinstate the petitioner in his civil service position, and that on failure to do so they be committed to the county jail of Cook county not exceeding a period of six months or until they should comply with the order by reinstating petitioner in his civil service position with the park. The respondents prosecute this writ of error to reverse the judgment.

The record discloses that petitioner had been employed by the West Park Commissioners since April, 1905, and after the passage by the legislature of the civil service law applicable to parks he became a civil service employee of the commissioners; that on October 15, 1928, he took the prescribed civil service examination for concrete construction foreman, passed first on the list, and was duly certified to said position; that he faithfully performed his work and was laid off January 30, 1930; that prior to that date he was assigned to duty as "cement finisher," performing most of the duties of concrete construction foreman but without the title or the pay therefor; that the assignment to this position was a demotion and part of his duties were thereafter performed by Walter F. Terrell under the title of "Master Mechanic," but who was not qualified as a civil service employee; that afterward, in May, 1932, he filed his petition for a writ of mandamus to compel the Park Commissioners, its officers and employees, including the civil service board, forthwith to recognize and assign him to his proper place on the pay roll of the classified civil serv-

ice as concrete construction foreman, and that he be paid his back salary; that after a hearing a writ was awarded and he was again assigned to his proper place as civil service employee and continued in his duties for about six months under the old park board, and continued to occupy his same position under the new park board for a period of about three months, until March 24, 1933, when he was again laid off and his duties were taken over by Walter F. Terrell, master mechanic, who was not a civil service employee, and other employees who were not civil service employees of the West Parks. It further appears that after he was reinstated, pursuant to the writ of mandamus by the old board, he was paid his back salary amounting to more than $4,000, and that part of the judgment was satisfied by the petitioner.

The respondents filed a verified answer in which they set up that the petitioner was laid off in good faith because of lack of funds and lack of work; that petitioner's work was not being done by Walter F. Terrell or other employees of the Park.

Petitioner offered evidence tending to show that after he was laid off part of his duties were performed by Terrell and part by Lars Thompson, who were temporary employees of the park and not qualified under the civil service law. Respondents' counsel on the hearing did not cross-examine petitioner's witnesses nor was any evidence offered on behalf of respondents, they taking the position that their verified answer set up a good defense and purged them of contempt, and that they should have been discharged on their answer. In support of this it is said that "At common law in contempt proceedings, whether criminal or civil, the sworn answer of the accused validly denying or purging the contempt, is held absolutely conclusive and entitles the defendant to be discharged."

In a number of cases language has been used that might be construed to lay down the rule that there is a distinction between the practice in courts of law and courts of equity; that in courts of law the sworn answer, if sufficient to purge the alleged contemnor, he will be discharged and no evidence heard; while if the suit is in equity, the answer may be controverted by evidence. *Crook v. People,* 16 Ill. 534; *Oster v. People,* 192 Ill. 473; *Hake v. People,* 230 Ill. 174; *People v. McCaffrey,* 232 Ill. App. 462. But an examination of these cases and others where similar language was used discloses the fact that in none of them was this rule stated to be the rule of practice. But the true test is whether the contempt charged is civil or criminal. If the former, the sworn answer of the defendant alleged to be in contempt does not purge him, but opposing evidence may be heard; while in the latter or criminal contempt, if the sworn answer be sufficient to free him from the imputed contempt, he will be discharged. *Loven v. People,* 158 Ill. 159; *Rothschild & Co. v. Steger & Sons' Piano Mfg. Co.,* 256 Ill. 196; *People v. Peters,* 305 Ill. 223.

In the *Loven* case it was held that the rule that the sworn answer of the defendant in contempt proceeding must be taken as true applied only where the proceeding was brought to vindicate the majesty of the law or the dignity of the court, and not to cases involving acts treated as contempt, in the enforcement of orders and decrees, as part of the remedy sought. In that case an injunction was awarded restraining Loven from advertising certain medicines and from divulging certain secrets used in the manufacture of the medicines. It was claimed that he violated the injunction and contempt proceedings were instituted. He contended that he should be discharged on his sworn answer which denied any violation of the injunction —that the answer must be taken as true and no coun-

tervailing evidence could be heard. In denying this contention the court said (pp. 166, 167): ''We think the rule thus suggested has no application to cases of this kind. There is a well recognized distinction between the practice in contempts, properly so-called, where the proceeding is brought to vindicate the majesty of the law or the dignity of the court, and cases involving acts treated as contempts, for the enforcement of orders and decrees, as a part of the remedy sought. In the former, the defendant will be discharged if, by his answers to interrogatories filed, he makes such a statement as will free him from the imputed contempt, and opposing testimony will not be heard. But as held in *Crook v. People,* 16 Ill. 534 (on p. 537): 'Presented for the purposes of affording civil redress, there is no solidity in the objection to the taking proofs, on the part of the prosecution, to contradict defendant's answers to the interrogatories filed. Such is the general, though it may not be the universal, practice, whether on a motion to show cause why the attachment should not issue, or upon hearing of the contempt.' ''

In the *Rothchild & Co.* case, *supra* (256 Ill. 196), it was held that in Illinois the only recognized distinction between criminal and civil or remedial contempts is that in the latter proceeding the court will hear proofs to contradict the answer of the party charged with contempt; while in a proceeding for criminal contempt, if the party purges himself of the alleged contempt by his answer, he will be discharged. In that case it was sought to hold the defendant in contempt for violating an injunction. The court said (p. 200): ''The distinction between criminal and civil contempts has been recognized in this jurisdiction ever since the decision in *Crook v. People,* 16 Ill. 534, which was decided in 1855.'' The court then cites a number of

cases, including *Hake v. People,* 230 Ill. 174, and continuing said (p. 200):

"In the case last above cited many of the previous decisions in this State were reviewed and we sought to make the distinction between criminal and remedial contempts clear. In the early case of *Crook v. People, supra,* the rule was announced that in a civil contempt the court would hear proofs to contradict the answer of the party charged with the contempt, while in a proceeding at law for a criminal contempt the law is otherwise. In such cases, if the party purges himself of the alleged contempt by his answer, he is discharged."

*People v. Peters, supra* (305 Ill. 223) was an original petition for a writ of mandamus filed in the Supreme Court to compel Peters, sheriff of Cook county, to take into custody certain persons adjudged guilty of contempt for refusing to obey the order and judgment of the circuit court of Cook county. Some of them had been sentenced to pay fines and to be imprisoned in the county jail. The defense interposed by the sheriff was that the persons adjudged guilty of contempt had been pardoned by the governor. The court held that the contempt involved was civil and therefore the defendants could not be pardoned by the governor, and a writ was awarded. The court there said (p. 226):

"For some purposes most authorities classify contempts as civil and criminal. Where the contempt proceedings are an incident to the enforcement of the judgments and decrees entered in furtherance of the remedy sought in litigation, they are usually called civil contempts. Criminal contempts are said to be something done or omitted in the presence of the court to interrupt its proceedings or lessen its dignity and authority, or out of the court's presence in disregard or abuse of its authority. (*Hake v. People,* 230 Ill.

174.) The principal reason for the classification seems to arise out of the form of the proceedings in the two classes of cases." And continuing the court said (p. 228): "We believe the authorities universally hold that a proceeding to punish a party for refusing to perform an act he was ordered to perform, which was for the benefit of or would advance the remedy of the other party to the suit, is for a civil contempt. The most frequent illustrations of civil contempts are in the violations of injunctions by doing an act the party was ordered not to do or refusing to perform an act a party was ordered to perform. We are unable to see any distinction between the contempt here involved and a contempt for violation of an injunction." That case originated in a quo warranto proceeding instituted against the Board of Education, in Chicago, to determine what persons constituted the Board of Education. There was an order of ouster entered in that case and for the violation of that order the circuit court held certain members to be in contempt of court. And, as stated, some of them were sentenced to pay fines and to be imprisoned in the county jail. After the governor had attempted to pardon them, the original petition for mandamus was filed in the Supreme Court. All of these proceedings were at law and not in chancery, and the court made no distinction in the procedure, whether at law or in equity, but the test was whether the alleged contempt was civil or criminal. If civil, the answer of the defendants did not purge them, but opposing evidence might be heard. But if the contempt charged was what is designated criminal contempt then the sworn answer, if sufficient, purged the defendants. This seems to be the true rule and it is immaterial whether the contempt originated out of a suit in chancery or an action at law.

In the instant case the court did not err in refusing to discharge the respondents on their sworn answer

because it is clear that what was sought to be accomplished was for the benefit of the petitioner, Burgeson, and therefore the contempt was civil and not criminal.

The contention that the writ of mandamus awarded against the old park board who reinstated the petitioner to his position after the writ was awarded, he being later laid off by the new board, was not binding on the new board, is without merit. The writ bound the new board as well as the old board to maintain the petitioner in his position. *People v. Supervisor,* 100 Ill. 332; *State Board of Equalization v. People,* 191 Ill. 528; *People v. DeYoung,* 298 Ill. 380. In the *State Board of Equalization* case, the court said (p. 541): "The law is well settled that the termination of the office of a respondent in *mandamus* proceedings does not abate the writ, and that the proceedings may be continued against his successor in office without beginning *de novo.* (13 Ency. of Pl. & Pr. 756; *People v. Supervisor,* 100 Ill. 332.)"

After the abstracts and briefs were filed in which, as above stated, the only argument made by the respondents was that they should be discharged on their answer, the court on its own motion requested that the evidence offered by the petitioner, tending to show that he had been wrongfully laid off and that after this occurred his work was being performed by temporary employees of the Park who were not under civil service, be abstracted and additional briefs filed on the question whether the evidence offered by the petitioner sustained his contention, and that has been done.

Respondents now argue that the evidence shows there was little or no work for petitioner to do, and that the little work there was for him to perform was done by his superiors, who had a right to do it under

the civil service regulations of the park commissioners. Obviously, the respondents had the legal right to lay off the petitioner if there was little or no work for him to do or if there was no money with which to pay him for his services. Counsel for the respondents say that respondents' sworn answer is not only a pleading but is evidence which the court should consider in conjunction with the other evidence. We think this contention is unsound. The case was not tried on the sworn petition and respondents' sworn answer, but was heard on the evidence adduced. The answer is to be considered as a pleading and nothing more.

On the merits, counsel for respondents, in their additional briefs, correctly say: "The precise questions before this Court then are whether there was cause for laying off Burgeson, and whether the Board acted in good faith in doing so," and that this is a question of fact to be determined from the evidence.

We have carefully considered the evidence on this question and the argument of counsel for the respondents, and it is to be regretted that, on the hearing, the merits of the controversy were not gone into by counsel then representing respondents. As stated, all of the evidence was produced by the petitioner. It is to the effect that other employees of the park commissioners were doing the work of the petitioner and that they were not under the civil service law. If they were properly appointed as temporary employees (and we must assume that they were) and there was little or no work for the petitioner to do and no funds to pay him, then some little part of the work that would ordinarily be done by the petitioner might properly be performed by the temporary employees provided such action was taken in good faith, and provided further that the park commissioners were saving money by doing the work in this manner.

Upon consideration of all the evidence we are unable to say that the action of the respondents, in laying off the petitioner and having his work or part of it done by other parties, resulted in any financial saving. This may be the fact, but if such were the case, the duty devolved on the respondents to produce the evidence.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.