EL PUEBLO DE PUERTO RICO, representado por JOSÉ E. COLOM, COMISIONADO DEL INTERIOR, demandante, *v.* PORTO RICO RAILWAY, LIGHT & POWER CO., demandada y apelante; PUERTO RICO ILUSTRADO, INC., JOSÉ COLL VIDAL y ANGEL RAMOS, querellados y apelados.

Núm. 8165.—*Sometido:* Abril 29, 1940. *Resuelto:* Mayo 31, 1940.

*Brown, González & Newsom,* abogados de la apelante; *R. Cuevas Zequeira,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

La Porto Rico Railway, Light & Power Co., demandada en un pleito sobre expropiación forzosa iniciado por El Pueblo de Puerto Rico, radicó en la corte de distrito una petición en solicitud de que se dictara una orden para mostrar causa por la cual cierto periódico, su director y administrador, no debían ser castigados por desacato. Los querellados en el procedimiento de desacato radicaron una contestación y una moción para que se desestimara la solicitud. La peticionaria apela de una resolución o sen-

tencia adversa que puso fin al procedimiento. Los apelados solicitan la desestimación del recurso fundados en que no existe disposición legal alguna que lo autorice y en que es frívolo, por los fundamentos que aducen en una moción para desestimar el procedimiento de desacato, radicada en la corte de distrito, y por otras razones, a saber:

"(a) Porque no habiéndose imputado en la querella la comisión de actos que implicaran desobediencia de órdenes, decretos o resoluciones dictadas en el pleito principal a favor de la peticionaria, carece ésta de la condición de parte agraviada indispensable para establecer recurso de apelación contra la sentencia que absolviera a los querellados. Art. 294 Código de Enjuiciamiento Civil de Puerto Rico. *Cortés* v. *Rivera,* 41 D.P.R. 298; *Diego Agüeros & Co.* v. *Navarrete,* 36 D.P.R. 875; *Cruz* v. *Sucn. Jiménez,* 32 D.P.R. 833; *Freire* v. *Quintero,* 23 D.P.R. 128.

"(b) Porque en el supuesto de que los hechos alegados en la querella constituyeran falta de respeto a la autoridad y dignidad de la corte, el desacato tendría carácter penal; y como en cualquier otro delito público, la sentencia absolutoria es inapelable, ya que en tales casos no existe parte perjudicada. El privilegio de la apelación compete sólo al acusado declarado culpable, cuando se trata de sentencia condenatoria. Art. 347 Código de Enjuiciamiento Criminal; *Gotay Ex parte y El Pueblo,* 37 D.P.R. 472; *Pueblo* v. *Lorenzo,* 18 D.P.R. 978.

"(c) Porque habiéndose imputado por la demandada peticionaria, a los querellados, actos de naturaleza delictiva, que hubieran podido culminar en el pronunciamiento de una sentencia contra dichos querellados, privándoles de su libertad, como medio de vindicar la dignidad de la corte desacatada; el procedimiento tiene el carácter de un proceso criminal, en el que las partes verdaderas son el Estado, como perseguidor, y los querellados, como acusados.

" 'La imputación hecha a la parte apelante (desacato criminal) es en verdad un delito criminal. No quiero decir que sea un delito procesable, mas séalo o no, es un delito criminal, y es un delito y el único que conozco que es castigable en el derecho común de manera sumaria. La contienda no existe entre las partes en el litigio original, sino entre el público y el acusado.' *Michaelson* v. *United States, etc.,* 266 U. S. 42, 35 A.L.R. 457.

" 'Un litigante no puede apelar de la actuación de la corte al resolver la cuestión. El litigante no puede controlar el procedimiento,

que tiene por mira proteger al tribunal, y que ha de invocarse o no a discreción de éste, pero que debe utilizarse libremente cuando los intereses de la justicia y los derechos de los litigantes así lo exijan. ''Apenas tiene excepción la doctrina de que la expedición *vel non* de recursos de desacato procede en todo caso dentro de la sana discreción de la corte.'' (4 Ency. of Pl. & Pr. 774.)' *People* v. *Durrant,* 116 Cal. 179, 209.

'' 'Estos desacatos son infracciones a la ley y conllevan castigo como tales. Si semejantes actos no son penales, estamos equivocados en cuanto a las características más fundamentales de los ''delitos'' (*crimes*), tal cual esa palabra ha sido entendida en el idioma inglés.' *Ex parte Grossman,* 267 U. S. 87, 38 A.L.R. 131, 136; *State* v. *Magee Pub. Co.,* 38 A.L.R. 142.

''(*d*) Porque habiéndose basado la querella de desacato en la comisión de actos específicos que fueron imputados a los querellados, y existiendo por parte de éstos una negación de dichos actos, venía obligada la corporación demandada y peticionaria a presentar evidencia para sostener las alegaciones esenciales de la querella; y uno de los fundamentos que tuvo la corte inferior, según se expresa en la resolución apelada, fué el hecho de no haberse presentado prueba por el demandado para sostener las alegaciones de su querella.''

Oponiéndose a la moción para desestimar, la apelante cita las siguientes disposiciones estatutarias y autoridades: *Del Toro* v. *Corte Municipal,* 16 D.P.R. 93; *Ex parte Paniagua et al.,* 33 D.P.R. 902; Sección 295 del Código de Enjuiciamiento Civil; Sección 345 del Código de Enjuiciamiento Criminal; *In re Montalvo,* 22 D.P.R. 653; *Pueblo* v. *De Jesús,* 39 D.P.R. 331; *Pueblo* v. *Lastra,* 50 D.P.R. 118; *Pueblo* v. *Bigio,* 51 D.P.R. 165; *Sánchez* v. *Romany,* 53 D.P.R. 596; *Lamb* v. *Cramer,* 285 U. S. 217; *Smith* v. *Clothier* (Kan.) 213 P. 1071, 1074; *Gibson* v. *Rogers* (Ky.) 109 S. W. (2d) 402; *Baskin* v. *Livers* (Wash.) 43 P. (2d) 42; *Red River Valley Brick Corp.* v. *Grand Forks* (N.D.) 146 N. W. 876; *State* v. *North Shore Boom etc. Co.* (Wash.) 103 P. 426, 107 P. 196; *Vilter Mfg. Co.* v. *Humphrey* (Wis.) 112 N. W. 1095, 13 L.R.A. (N.S.) 591; *In re Christensen Engineering Co.,* 194 U. S. 458; *Thompson* v. *Nelson* (Neb.) 96 N. W. 194; *State* v. *Knight* (S.D.) 54 N. W. 412; *Spannaus* v. *Lueck* (Minn.) 279 N. W. 216; *People* v. *Forbes* (N. Y.)

38 N. E. 303; *In re Opinions of the Justices* (Mass.) 17 N. E. (2d) 906; *Blackenberg* v. *Commonwealth* (Mass.) 157 N. E. 693; Sección 348 del Código de Enjuiciamiento Criminal; 17 C. J. S. 71, 74; 12 Am. Jur. 433; *Bessette* v. *W. B. Conkey Co.,* 194 U. S. 324; *State* v. *Bland* (Mo.) 88 S. W. 28; *Doyle* v. *London Guarantee & Accident Co.,* 204 U.S. 599; *In re González,* 22 D.P.R. 28; *Oronoz* v. *Montalvo,* 21 D.P.R. 347.

Los apelados, en un memorandum de réplica, se fundan en la siguiente jurisprudencia: 13 C. J. 57; *Ramsay* v. *Ramsay,* 14 A. L. R. 712, 716, 717; *Ex parte Earman* (Fla.) 95 So. 755; *People* v. *Peters* (Ill.) 137 N. E. 118; *Bender* v. *Young* (Mo.) 252 S. W. 691; *Ex parte Wolters* (Tex.) 144 S. W. 531; *Smith* v. *Smith* (W. Va.) 95 S. E. 199; *Witmer* v. *District Court* (Iowa) 136 N. W. 113; *Ex parte Grossman,* 267 U. S. 87; *State* v. *Magee Pub. Co.,* 38 A.L.R. 142; Sección 347 del Código de Enjuiciamiento Criminal; Sección 294 del Código de Enjuiciamiento Civil; *Michaelson* v. *United States,* 266 U. S. 42; *People* v. *Durrant,* 116 Cal. 179, 209; *Kelly* v. *Montebello Park Co.,* 28 A. L. R. 33, 60, 61; Rapalje on Contempts 207; Dangel on Contempts (1939 ed.) 285.

La petición en que se solicitaba una orden para mostrar causa, la moción para eliminar ciertas partes de la petición, la moción para desestimar la petición y la contestación llevaban todas el siguiente epígrafe:

El Pueblo de Puerto Rico,
representado por José E. Colom,
Comisionado del Interior,                                  Civil Núm. 32,557
   Demandante,                        Sobre:
     v.                              Expropiación forzosa.
Porto Rico Railway Light &
Power Company,
   Demandada.

La peticionaria alegó que:

La corte de distrito, en todas las fechas mencionadas en la petición, ha tenido bajo su consideración la causa civil núm. 32,557,

interpuesta por El Pueblo de Puerto Rico, representado por su Comisionado del Interior José E. Colom, como demandante, contra la peticionaria, como demandada; la peticionaria interpuso en dicho caso, en 22 de septiembre de 1939, una moción eliminatoria a la demanda. La moción fué discutida verbalmente y mediante alegatos escritos y declarada sin lugar con fecha 16 de octubre de 1939. El 26 de octubre la peticionaria interpuso excepciones previas a la demanda y las mismas fueron discutidas el 6 de noviembre. Se concedió a la peticionaria un término de diez días para radicar un alegato y al Pueblo un término de 48 horas para replicar. El 8 de noviembre el periódico "El Mundo", publicado por Puerto Rico Ilustrado, Inc., siendo su director el Sr. José Coll Vidal y su administrador el Sr. Angel Ramos, publicó o hizo que se publicara, y circuló y distribuyó por la ciudad de San Juan, así como por la isla de Puerto Rico, la edición diaria de dicho periódico, la cual contenía un comentario y crítica en forma de editorial sobre la acción judicial arriba mencionada y expresando la opinión de dicho periódico para el consumo del público sobre los méritos del caso y especialmente sobre los méritos de las excepciones previas interpuestas por la peticionaria, criticando desfavorablemente dichas alegaciones y tildándolas de un medio encaminado exclusivamente a demorar el curso del litigio. Se acompaña a la petición, para formar parte de la misma, una copia del referido editorial y se marca "Exhibit A",

El efecto del editorial marcado "Exhibit A" fué perjudicial a la peticionaria como demandada en la referida acción y constituyó una discusión de dicho caso fuera del alcance de la corte que tenía el efecto de tender a influir en el ánimo de la corte en perjuicio de la demandada. Dicho editorial o publicación era·y es lesivo a la dignidad y decoro de la corte porque pretende usurpar el derecho exclusivo de la misma para resolver los casos que penden ante su consideración, sin que dichas resoluciones sean afectadas o estorbadas por comentarios, críticas y opiniones gratuitas expresadas por terceras personas y diseminadas al público. La referida publicación o editorial colocó a la corte en una situación difícil y embarazosa en cuanto a la resolución de las excepciones previas interpuestas por la peticionaria, porque de haber entendido la corte que las mismas debieron haber sido declaradas con lugar, ella hubiese estado sujeta al desprecio, desdén, crítica injusta y hasta injuriosa del público o parte del mismo debido a la opinión que dicho público pueda o ha podido formar por motivo de la referida publicación o editorial; que el efecto antes mencionado en cuanto a la corte, de la referida publi-

cación o editorial continúa y continuará hasta tanto el caso sea final-
mente resuelto por la corte de distrito y por las cortes que puedan
entender del mismo en grado de apelación.    El referido editorial
o publicación ha tenido y tiene también el efecto de privar a la peti-
cionaria del derecho que le garantiza la ley a un juicio imparcial
ante un tribunal competente de justicia, de acuerdo con las prácticas
y procedimientos legales, sin que el mismo sea afectado o estorbado
por influencias, comentarios o publicaciones fuera del alcance de la
corte.

La mayor parte de los comentarios y de las críticas hechos en la
referida publicación o editorial marcado "Exhibit A" no son ciertos
ni están justificados por los autos de dicho caso.    Dicha publicación
o editorial constituye una extralimitación de la libertad de prensa
y, a juicio de la peticionaria, un desacato a la corte.

El día 21 de diciembre de 1939 la peticionaria radicó su contes-
tación en la acción judicial a que se ha hecho referencia anterior-
mente y dos días después de radicada dicha contestación y estando
aún el referido caso pendiente de resolución, el mismo periódico "El
Mundo", siendo su director el Sr. José Coll Vidal y su administrador
el Sr. Angel Ramos, en diciembre 23, 1939, publicó o hizo que se
publicara y circuló y distribuyó por la ciudad de San Juan, así como
por la isla de Puerto Rico, la edición diaria de dicho periódico, la
cual contenía un comentario y crítica en forma de editorial sobre
los méritos del caso y de las alegaciones y defensas contenidas en
la referida contestación de la peticionaria, criticando desfavorable-
mente dichas alegaciones y defensas y tildándolas de absurdas y
carentes de fundamento y reafirmando la opinión de dicho periódico
de que las mismas han sido interpuestas con el solo fin de demorar
el curso del litigio.    Copia fiel y exacta de la referida publicación o
editorial se acompaña a la petición para formar parte de la misma
y se marca "Exhibit B".

El efecto del editorial o publicación que se acompaña a la peti-
ción marcado "Exhibit B" fué y es en perjuicio de la peticionaria
como demandada en la referida acción y constituye una discusión
de dicho caso fuera del alcance de la corte.    La referida publicación
o editorial ha colocado a la corte en situación difícil y embarazosa
en cuanto a la resolución final del caso y especialmente en cuanto a
la resolución o resoluciones que pueda dictar en relación con las
alegaciones y defensas contenidas en la contestación radicada por la
peticionaria, porque de ser declaradas con lugar por la corte, sujetará
la misma al desprecio, desdén, crítica injusta y hasta injuriosa del
público o parte del mismo, debido a la opinión que dicho público

pueda o ha podido formar por motivo de la referida publicación o editorial. El efecto de la referida publicación o editorial, en cuanto a la corte, continúa y continuará hasta tanto el caso sea finalmente resuelto por la corte de distrito y en grado de apelación. El referido editorial o publicación ha tenido y tiene también el efecto de privar a la peticionaria del derecho que le garantiza la ley a un juicio imparcial que debe ser resuelto por un tribunal competente de justicia, de acuerdo con las prácticas y procedimientos legales, sin que el mismo sea afectado o estorbado por influencias, comentarios o publicaciones fuera del alcance de la corte.

La mayor parte de los comentarios y de las críticas hechos en la referida publicación o editorial marcado "Exhibit B" sobre la acción mencionada en el mismo no son ciertos, ni están justificados por los autos de dicho caso y la referida publicación o editorial constituye una extralimitación de la libertad de prensa y, a juicio de la peticionaria, un desacato a la corte.

Se suplicaba se dictara una orden dirigida a los querellados para que mostraran causa por la cual no debían ser castigados por desacato debido a la publicación de los dos editoriales mencionados en la petición.

La súplica pudo tal vez ser más específica. Debe ser interpretada, sin embargo, a la luz de la petición misma, incluyendo su título. Es significativo el hecho de que la petición y todas las alegaciones subsiguientes tuvieran el mismo título que la acción principal. Parafraseando el lenguaje del Juez Sr. Lamar en el caso de *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 446: La petición no tenía por título *El Pueblo de Puerto Rico* v. *Puerto Rico Ilustrado, Inc., et als.*, "como hubiera sido lo propio y como era necesario de acuerdo con algunas decisiones, si los procedimientos hubieran sido en ley *(at law)* por desacato criminal". Si en el presente caso se hubiese impuesto una multa incondicional a los querellados y si en apelación ellos hubieran insistido en que la multa les había sido impuesta, no para beneficio de las partes, sino como "retribución por un delito", esta corte quizá hubiera contestado la contención

indicando, tal cual lo hizo la Corte Suprema de los Estados Unidos en el caso de *Fox* v. *Capital Co.,* 299 U. S. 105, 109:

"...Al imponer la multa, la corte no actuaba *sua sponte* ni a instancias del gobierno por mediación de un funcionario fiscal. *Gompers* v. *Bucks Stove & Range Co.,* supra; *Lamb* v. *Gramer,* supra; *Union Tool Co.* v. *Wilson,* 259 U. S. 107, 112; *Michaelson* v. *United States,* 266 U. S. 42, 64; *Leman* v. *Krentler-Arnold Hinge Last Co.,* 284 U. S. 448, 452. Tendió su mano protectora a una parte que acudió en solicitud de ayuda."

Del cuerpo de la petición se desprende con razonable claridad que la médula del cargo fué la invasión del derecho de la peticionaria a tener un juicio justo e imparcial por una corte exenta de influencias, debido a la tendencia obvia y al posible efecto que los ataques violentos del periódico podían tener sobre las alegaciones de la peticionaria en el recurso que se hallaba pendiente antes de la corte haber tenido la oportunidad de considerar los méritos de tales alegaciones. De ello se desprende, a nuestro juicio, que en la súplica se solicitaba "acción remedial" más bien que una orden puramente punitiva para vindicar la autoridad de la corte.

Los primeros cinco párrafos del sumario al caso de *Lamb* v. *Gramer,* 285 U. S. 217, dicen así:

"1. El letrado de la demandada en un pleito para anular traspasos en fraude de acreedores, recibió de su cliente mientras la causa estaba pendiente parte de los bienes en controversia en pago de sus honorarios profesionales. Más tarde se dictó resolución al efecto de que las demandantes tenían gravámenes sobre todos los bienes en controversia y designando un síndico para liquidar dichas cargas. *Se resolvió:*

"(1) Que el letrado tomó dichos bienes sujetos a las equidades expuestas en la petición y resolución. Pág. 219.

"(2) El hecho de retener la propiedad el letrado después de haberse dictado la resolución constituía un desacato a la corte que podía castigarse civilmente. Pág. 219.

"(3) Un procedimiento de desacato iniciado con el propósito de obligar la devolución de bienes ilegalmente traspasados y para cum-

plimentar una resolución dictada en el pleito principal en beneficio de la parte demandante, es un procedimiento civil. Pág. 220.

"2. La misma conducta puede constituir desacato civil y desacato criminal. Pág. 221.

"3. Lo que determina si se trata de un desacato civil o criminal es el fin del castigo, más bien que la naturaleza del acto castigado. Pág. 220.

"4. Una sentencia dictada por la corte de distrito desestimando un procedimiento de desacato civil por falta de jurisdicción, *se resolvió* que era final y apelable. Pág. 221.

"5. Un procedimiento de desacato civil iniciado en ayuda de un pleito en equidad y del decreto que en él se dicte o pueda dictarse, puede ser sostenido independientemente del pleito, y es independientemente apelable. Id."

Citamos de la opinión:

"La corte inferior resolvió acertadamente que a tenor de los hechos presentados por la petición, podían instruirse procedimientos contra Lamb, bien en equidad, conforme se hizo por la petición complementaria radicada por el síndico en *Lamb* v. *Schmitt,* post, pág. 222, o mediante procedimientos de desacato, tal cual ocurre en el presente caso, o en ambas formas, para compelerle a devolver a la custodia de la corte los bienes ilegalmente traspasados... El haber recibido y ocultado los bienes, que estaban entonces *in gremio legis*— véanse *Metcalf* v. *Barker,* 187 U. S. 165, 173 *et seq.; Pierce* v. *United States,* 255 U. S. 398—tendía a burlar cualquier decreto que la corte pudiera finalmente dictar en la causa. Ese hecho y la retención de los bienes por parte de él, luego de haberse dictado el decreto, eran en fraude de los derechos de los demandantes a proseguir el litigio hasta su terminación, y obstruían la justicia en forma tal que constituía un desacato a la corte, y el mismo podía ser perseguido civilmente. *Merrimack River Savings Bank* v. *Clay Center,* 219 U. S. 527, 535–536; *Clay* v. *Waters,* 178 Fed. 385, 390, 391. Cf. *In re Swan,* 150 U. S. 637.

. . . . . . : : .

"Un procedimiento para obtener tal remedio es de naturaleza civil. Véanse *Gompers* v. *Bucks Stove & Range Co.,* supra, pág. 449; *Bessette* v. *W. B. Conkey Co.,* supra, pág. 338 (194 U. S. 324); *Leman* v. *Krentler-Arnold Hinge Last Co.,* 284 U. S. 448.

"El decreto de la corte de distrito desestimando la petición finalmente determinó los derechos allí envueltos. *Shaffer* v. *Carter,* 252

U. S. 37, 44; *The Pesaro,* 255 U. S. 216, 217; *Rosenberg Bros. &
Co.* v. *Curtis Brown Co.,* 260 U. S. 516, 517. El procedimiento,
basado en transacciones llevadas a cabo en relación con los bienes
envueltos en el pleito principal, se inició en ayuda de dicho pleito
y de cualquier decreto que pudiera dictarse en el mismo. Pudo pro-
seguirse independientemente del litigio, bien antes o después de
haberse dictado el decreto, siempre que éste permaneciera sin ejecutar;
y el recurso de apelación no dependía de la apelación que se inter-
pusiera contra dicho decreto. Véanse *Root* v. *Woolworth,* 150 U. S.
401, 411; *Leman* v. *Krentler-Arnold Hinge Last Co.,* supra; *Gompers*
v. *Bucks Stove & Range Co.,* supra, págs. 451–452; *Utah* v. *United
States,* (248 U. S. 534) supra." (Paréntesis nuestro.)

Mucho se ha dicho y muchas aseveraciones concluyentes
han sido hechas en relación con la norma por la cual ha de
determinarse la naturaleza de un procedimiento de desacato.
Tales aseveraciones deben interpretarse a la luz de los hechos
que están bajo consideración al tiempo de hacerse las aseve-
raciones. Ninguna de esas normas es infalible o exclusiva.
Ninguna de las reglas, no importa cuán general, debe ser
ciegamente seguida, irrespectivamente de las circunstancias
envueltas en el caso específico. No puede decirse que en
todos los casos el peticionario en un procedimiento de des-
acato civil carece de remedio a menos que el querellado haya
dejado de "hacer algo que la corte o el juez le ordenaron
realizar en un procedimiento civil para beneficio de la parte
contraria en el mismo". Ésa parece ser la teoría del segundo
fundamento de la moción para desestimar presentada en la
corte de distrito. También es la teoría del primer funda-
mento de la moción para desestimar el presente recurso. El
segundo fundamento de la moción para desestimar en la
corte de distrito es el único mencionado por los apelados en
su memorándum y los otros fundamentos en que se basaron
en la corte de distrito agregan poco o nada a aquéllos que
sirven de base a la presente moción para desestimar la ape-
lación. En el caso de *Lamb* v. *Gramer,* supra, Lamb no
había dejado de hacer algo ordenádole por el juez de distrito.

El juez de la corte inferior en su relación del caso, opinión y resolución decidió adversamente a los querellados las cuestiones suscitadas por los fundamentos segundo, tercero, cuarto y sexto de la moción para desestimar la petición de la demandada, pero llegó finalmente a la conclusión de que "procede desestimar la querella y absolver a los querellados".

No estamos ahora considerando los méritos del procedimiento de desacato ni los méritos del presente recurso. El factor dominante del procedimiento, irrespectivamente de cualquier cuestión que entre en los méritos del caso, fué su aspecto civil.

*Debe declararse sin lugar la moción.*

El Juez Asociado Sr. Travieso disintió.*